666 So.2d 218 (1995)
Gerard AUGUSTIN, Appellant,
v.
STATE of Florida, Appellee.
No. 94-03458.
District Court of Appeal of Florida, Second District.
December 27, 1995.
*219 James Marion Moorman, Public Defender, and Michael J.P. Baker, Assistant Public Defender, Bartow, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Susan D. Dunlevy, Assistant Attorney General, Tampa, for Appellee.
PER CURIAM.
The appellant, Gerard Augustin, challenges the trial court's denial of motions to suppress evidence in two separate cases.[1] He also contends that the trial court erred in assessing the amount of public defender fees, in imposing certain conditions of probation, and in assessing certain court costs. We affirm the trial court's rulings regarding the motions to suppress. We agree, however, with appellant's other contentions and reverse and remand for further proceedings.
First, the trial court erred in assessing $300 in attorney's fees pursuant to section 27.56(1)(a), Florida Statutes (1993) without affording appellant the opportunity to object to the amount of the assessment. Bourque v. State, 595 So.2d 222 (Fla. 2d DCA 1992). Accordingly, on remand, appellant shall have thirty days from the date of our mandate within which to file a written objection to the amount of the fees. If such an objection is filed, the trial court shall strike the assessment and a new assessment shall not be imposed until appellant is afforded notice and hearing in compliance with Florida Rule of Criminal Procedure 3.720(d)(1). Trice v. State, 655 So.2d 1270 (Fla. 2d DCA 1995).
We also conclude that the trial court erred in imposing written conditions of probation requiring appellant to pay for the cost of a drug and alcohol evaluation, as well as the cost of any needed treatment (condition 20), and prohibiting him from using intoxicants to excess (condition 5). We have held that these are special conditions of probation which must be orally pronounced at sentencing. Nank v. State, 646 So.2d 762 (Fla. 2d DCA 1994). In this case, these conditions were not orally pronounced, and they must be stricken on remand by the trial court. Id.[2]
Finally, with regard to the issue of costs,[3] we reverse the "cost/fine" of $33 because no statutory authority was cited to support its assessment. Sutton v. State, 635 So.2d 1032 (Fla. 2d DCA 1994). We also reverse the $100 assessment for the FDLE lab fee since the trial court failed to determine the appellant's ability to pay this fee. Callaway v. State, 658 So.2d 593 (Fla. 2d DCA 1995). Lastly, we reverse the $2 cost item imposed under section 943.25(13), Florida Statutes (1993). This cost is discretionary, *220 and the trial court failed to give appellant notice of its imposition. Williams v. State, 655 So.2d 1205 (Fla. 2d DCA 1995). On remand, however, the state may seek to reimpose these costs in accord with the law. Callaway, 658 So.2d 593; Reyes v. State, 655 So.2d 111 (Fla. 2d DCA 1995) (en banc).
Affirmed in part, reversed in part, and remanded for further proceedings.
SCHOONOVER, A.C.J., and LAZZARA, J., concur.
ALTENBERND, J., concurs in part and dissents in part with opinion.
ALTENBERND, Judge, concurring in part and dissenting in part.
I concur in the sentencing issues addressed by the majority opinion. I am troubled, however, by the police tactics described in this record. Although the issue is close, I would reverse the trial court's order denying Mr. Augustin's motion to suppress cocaine found during a search on March 3, 1994. I agree with the trial judge's suggestion at the suppression hearing that the Polk County Sheriff's Department should review its policy of authorizing deputies to repeatedly request "consensual" searches from an individual when the deputy has no reasonable suspicion to warrant a stop. Likewise, the policy of chasing a citizen on foot when he or she declines to engage in a "consensual encounter" with an officer  in hopes that the citizen will drop incriminating evidence or contraband  is a policy that should be carefully scrutinized. When examining the limited information in an appellate record, it is sometimes difficult to distinguish appropriate policies of community policing from policies that allow or encourage good police officers to engage in conduct that the public will perceive as harassment. This record suggests that these two policies do little to promote a good public perception of the Polk County Sheriff's Department.
Mr. Augustin is approximately thirty-five years old and lives in Winter Haven. His prior criminal record includes resisting an officer with violence and a number of misdemeanors. The record suggests that he has some mental limitations. There is nothing in the record indicating that he was a target of an investigation into drug sales or any other illegal activity at the time of these two arrests.
On March 3, 1994, two deputy sheriffs were assigned to community policing in the neighborhood of Third Street and Avenue Y in Winter Haven. They saw Mr. Augustin on the street. The deputies knew him because they had stopped him on approximately ten occasions in the recent past. On each prior occasion, they apparently had approached him without any basis for a lawful stop. On some of the occasions they obtained his consent for a search of his person. There is no indication that they had ever found any contraband on Mr. Augustin during one of these "voluntary" searches.
On March 3, the deputies got out of their cruiser and approached Mr. Augustin with no reason to believe that he was engaged in any criminal conduct. They simply walked up and asked him for consent to search his person for narcotics. Mr. Augustin consented, but when one of the deputies attempted to put his hand into the top pocket of Mr. Augustin's jacket, he slapped the deputy's hand out of his pocket. The deputy treated the slap as battery on a law enforcement officer, arrested Mr. Augustin, and located the cocaine in a search incident to arrest. The state never charged Mr. Augustin with resisting the officer or battery in this case.
The deputy's initial search of Mr. Augustin's pocket began during a simple policecitizen consensual encounter. In Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), the Supreme Court described such encounters:
[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions... . Nor would the fact that the officer identifies himself as a police officer, without more, convert the encounter into a seizure requiring some level *221 of objective justifications... . The person approached, however, need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way.
460 U.S. at 497-98, 103 S.Ct. at 1324, 75 L.Ed.2d at 236. Such a citizen encounter is simply a voluntary meeting of two or more people in a public place. No member of the meeting is compelled to attend. It is not an exercise of the deputy's police power, but an invocation of his or her freedom of public assembly under the First Amendment.
Following the legal reasoning in Royer, there is nothing to distinguish the deputies' consensual encounter with Mr. Augustin from an encounter on the street with a stranger who asks to rummage through one's purse or pockets. Perhaps I have led a sheltered life, but ordinary citizens have not made a habit of stopping me on the street to request this opportunity. I suspect that most citizens might expect me to take offense at such a request. It is one thing to be searched daily for the privilege of entering a courthouse or an airport; it is another to be searched daily for the privilege of walking on a public sidewalk. In my opinion, when Mr. Augustin slapped the officer's hand away, he used nonverbal communication to end the consent to search. Without evidence of more than a technical "battery," I would hold that this search was illegal after Mr. Augustin withdrew his consent.[4]
On March 23, 1994, the same two deputies approached Mr. Augustin in their cruiser while he was sitting on a bicycle, talking to two women. Again, without any legal basis, they asked to search Mr. Augustin. He consented and handed one of the deputies a pack of cigarettes that was in his hand. There was no contraband in the pack. Mr. Augustin got off his bicycle and started to walk away. The deputies agree that he was free to leave at that time. Nevertheless, one of the deputies chased Mr. Augustin when, upon being asked where he was going, he began to run away from this encounter. After they had run a distance, the deputy noticed that Mr. Augustin tugged on his pants and a gun fell to the road. This resulted in Mr. Augustin's second arrest.
At the hearing, the trial judge asked the deputy to explain why he was chasing a man who was free to leave. The deputy explained: "Because when I was in SIS we used to chase people all the time to make sure that they didn't drop any contraband, drugs or anything like that."
Because Mr. Augustin was not legally seized during this particular encounter, I reluctantly concur that the evidence obtained during that arrest is admissible under California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). My reluctance is based in part on the assumption the United States Supreme Court did not anticipate that Hodari D. would result in departmental policies encouraging officers to chase citizens. Such policies border on the type of conduct that the exclusionary rule is intended to deter. See State v. White, 660 So.2d 664 (Fla. 1995). My reluctance also stems from the sense that had an ordinary citizen approached Mr. Augustin without basis on twelve occasions, asked to search him for no reason, and then chased him when he fled, the police would probably arrest that ordinary citizen for illegal stalking. See § 784.048, Fla. Stat. (1993). There is obviously some distinction that I do not understand.
NOTES
[1] Case Nos. 94-1052 and 94-1331.
[2] The remainder of condition 20 requiring appellant to undergo an evaluation and to successfully complete any recommended treatment program is valid because it was orally pronounced at sentencing and not objected to. Franklin v. State, 658 So.2d 129 (Fla. 2d DCA 1995); Olvey v. State, 609 So.2d 640 (Fla. 2d DCA 1992) (en banc).
[3] The trial court only imposed costs in case no. 94-1052.
[4] Absent misconduct, this court requires the state to prove a defendant's consent to a search during a consensual encounter "by the preponderance of the evidence." State v. Boyd, 615 So.2d 786 (Fla. 2d DCA 1993). Consensual encounters are a valuable police investigative tool. I see no easy way to fashion a rule that declares repetitive consensual searches to be misconduct and increases the state's burden of proof to "clear and convincing evidence." On the other hand, in establishing "clear and positive" proof under the totality of the circumstances, the fact that the deputies had made multiple prior searches of the defendant without basis and without ever locating contraband might be relevant in assessing the nature of the police behavior. United States v. $280,505 in U.S. Currency, 655 F. Supp. 1487 (S.D.Fla. 1986) (listing factors to consider in establishing such consent). If the state met its burden of proof in this case, it did so by the thinnest of margins.