PER CURIAM.
The State appeals from an order granting the defendant’s motion to suppress physical evidence. For the following reasons, we reverse.
Julie Richardson, a shooting victim, told investigating police officers that her assailant was in fact her boyfriend with whom she had lived for five months. She further told police that she paid most of the bills and living expenses and had purchased furniture and appliances for their residence. Richardson agreed to allow the police to enter her home to arrest her boyfriend, the defendant.[1]
When she later met with police she told the officers that defendant was asleep at their home and that there were several weapons in the house, including the one he had used to shoot her. She told police that she had a key to the house and would unlock the door for them and let them in.
Richardson unlocked the door with her key; when the police entered they announced their presence and ordered defendant to come out with his hands up. Defendant was in the bedroom. At no time did he object to the search. When one particular gun was seized (a total of three firearms were found in the house) the defendant stated “that gun belonged to my father but now it’s mine.” The police seized the weapons — one of which had been used to shoot Richardson — as well as cocaine and drug paraphernalia found in the house.
Defendant moved to suppress that physical evidence on the grounds that the residence was his and that he had lived there his entire life; that Richardson only occasionally spent the night there; and that Richardson’s interests were hostile to his and that she therefore did not have the right to waive defendant’s fourth amendment rights and consent to the search. The trial court granted the motion, and in doing so, erred.
Since 1982, Florida courts have been constitutionally mandated to construe the validity of searches and seizures “in conformity with the 4th Amendment to the *796 United States Constitution, as interpreted by the United States Supreme Court.” Art. 1 § 12, Fla. Const. (1982). Pursuant to that standard, “determination of consent to enter ‘must be judged against an objective standard: would the facts available to the officer at the moment ... “warrant a man of reasonable caution in the belief’ ’ that the consenting party had authority over the premises?” Illinois v. Rodriguez, 497 U.S. 177, 188, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990) (emphasis added; citations omitted). See also State v. Purifoy, 740 So.2d 29, 29 (Fla. 1st DCA 1999) (person giving consent to search must “reasonably appear to have authority to do so.”) (citations omitted).
In this case the officers had a reasonable belief when they entered the residence that Richardson had authority over the premises and authority to consent to the entry and search. Richardson gave the address of the defendant’s house as her residence when she was treated for her gunshot wound at the hospital; she had a key and general access to the house. She told police officers that she had recently purchased appliances and furniture for the house, and in fact produced sales receipts in her name for those purchases that listed defendant’s house as the address for delivery.[2]
Although the police were factually wrong in their belief that Richardson lived at defendant’s residence, at the time of the search they had no reason to think otherwise even though she was the victim of the crime being investigated. The trial court’s reliance on Silva v. State, 344 So.2d 559 (Fla.1977) and State v. Gonzalez-Valle, 385 So.2d 681 (Fla. 3d DCA 1980) is misplaced, as those cases were decided before the adoption of Article 1, Section 12 of the Florida Constitution. Moreover, Gonzalez-Valle is factually inapposite. In Gonzalez-Valle, the wife who had consented to the search of the martial residence admitted, at the suppression hearing, that her consent was motivated by marital difficulties and anger and jealousy over her husband’s infidelity. Her motives were not revealed until that hearing; they were not communicated to the police at the time of the search and are therefore not relevant to the officers’ beliefs when they entered the residence.
We reverse the order of suppression and remand for further proceedings.

. What happened after this meeting and Richardson’s second meeting with police approximately two weeks later is not clear from the record.

. We recognize that these receipts were produced by the State after the hearing on the motion to suppress and are therefore not a factor in determining the reasonableness of the search at the time Richardson gave consent. Nevertheless, they are of some import in determining how credible Richardson appeared to the police.