902 So.2d 312 (2005)
Mario BAUTISTA, Appellant,
v.
STATE of Florida, Appellee.
No. 2D04-1205.
District Court of Appeal of Florida, Second District.
May 27, 2005.
*313 James Marion Moorman, Public Defender, and Lisa Lott, Assistant Public Defender, Bartow, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Deborah Fraim Hogge, Assistant Attorney General, Tampa, for Appellee.
SILBERMAN, Judge.
Mario Bautista was charged with possession of a fraudulent identification card pursuant to section 322.212, Florida Statutes (2002). After the trial court denied his motion to suppress, he entered a plea of guilty, reserving the right to appeal the denial of his dispositive motion. On appeal, Bautista challenges the trial court's denial of his motion to suppress and a cost that the trial court imposed as part of his sentence. We reverse and remand for discharge because the trial court erred in denying Bautista's motion to suppress. In light of our disposition, the alleged sentencing error is moot.
Bautista sought to suppress the allegedly fraudulent identification card and statements that he made to police officers following a traffic stop. The record reflects that in March 2003, Corporal Green and Officer Rivera of the Haines City Police Department conducted a traffic stop of a van in which Bautista was a passenger. The driver did not have a driver's license and was arrested. The officers asked Bautista for a driver's license or other identification, anticipating that they could release the van to him rather than having it towed. After Bautista responded that he did not have any identification with him, the officers asked him to exit the van. Later, Corporal Green stated that he could not recall if Bautista was asked to exit the van or if he got out on his own.
Corporal Green testified that there appeared to be a wallet in Bautista's pocket, and Bautista "was asked to remove it." Bautista complied and provided the officers with a valid Mexican driver's license. While the wallet was open, Corporal Green observed a resident alien card. He asked Bautista if that was his card, and Bautista stated "yes," pulled it out, and handed it to Officer Green. Officer Green recognized the card as fraudulent and arrested Bautista. Officer Green testified that Bautista was free to leave until he saw the resident alien card.
The trial court found that the officers' encounter with Bautista was consensual and that Bautista had been free to leave until he was arrested. On that basis, it denied the motion to suppress.
"When reviewing a motion to suppress, the standard of review for the *314 trial court's application of the law to its factual findings is de novo, but a reviewing court must defer to the factual findings of the trial court that are supported by competent, substantial evidence." Cillo v. State, 849 So.2d 353, 354 (Fla. 2d DCA 2003). The trial court's ruling is clothed with a presumption of correctness, and we "must interpret the evidence and reasonable inferences and deductions derived therefrom in a manner most favorable to sustaining the trial court's ruling." Pagan v. State, 830 So.2d 792, 806 (Fla.2002).
Bautista does not challenge the stop or the officers' request for identification. However, he argues that once he denied having identification, the officers should not have asked him to remove his wallet from his pocket, which ultimately led to the discovery of the fraudulent identification.
We conclude that when the officers asked Bautista to remove his wallet, the statement was a demand that changed the nature of the encounter from a consensual one to a detention. See Armstrong v. State, 880 So.2d 1283, 1283 (Fla. 2d DCA 2004) (concluding that when an officer asked Armstrong to come to him and to open his hand, the officer's statement was a demand resulting in a seizure because a reasonable person in Armstrong's position would conclude that he or she was not free to end the encounter and leave). The record reflects that the officers had no basis to ask for Bautista's wallet and detain him because, at the time, they did not have a reasonable suspicion that Bautista had committed, was committing, or was about to commit a crime. See Popple v. State, 626 So.2d 185, 186 (Fla.1993). Instead, they asked for Bautista's identification and wallet to save the owner of the van a towing expense. Corporal Green acknowledged that he did not recall whether Bautista had even expressed any interest in taking the van to another location. Once Bautista denied having any identification, the officers had no basis to detain Bautista or to ask him to remove his wallet from his pants.
After Bautista pulled out his wallet, he opened it and produced the Mexican driver's license. When Corporal Green asked about the alien card that he observed, Bautista gave it to Corporal Green. Under all of the circumstances, Bautista's producing the documents in response to the officers'"requests" is presumptively involuntary based on the officers' improper detention of him and their asking him to remove his wallet from his pants. See Faulkner v. State, 834 So.2d 400, 403 (Fla. 2d DCA 2003) (stating that when consent follows illegal police activity, it is presumptively involuntary and the State may only overcome this presumption by showing "an unequivocal break in the chain of illegality sufficient to dissipate the taint of the prior illegal police action"); Mitchell v. State, 558 So.2d 72, 74-75 (Fla. 2d DCA 1990) (concluding that consent given after an illegal detention was involuntary and not valid because it was the result of acquiescence to police authority, absent an unequivocal break in the chain of illegality).
Because the officers only discovered that Bautista possessed a fraudulent identification card as a result of their improperly requiring him to produce his wallet, the trial court should have granted Bautista's motion to suppress. Accordingly, we reverse the denial of the motion to suppress and remand with directions that Bautista be discharged.
Reversed and remanded.
SALCINES and VILLANTI, JJ., Concur.