924 So.2d 868 (2006)
STATE of Florida, Appellant,
v.
Wallie M. WITHERSPOON, Appellee.
No. 2D05-3429.
District Court of Appeal of Florida, Second District.
February 24, 2006.
Rehearing Denied April 11, 2006.
*869 Charles J. Crist, Jr., Attorney General, Tallahassee, and Sonya Roebuck Horbelt, Assistant Attorney General, Tampa, for Appellant.
James Marion Moorman, Public Defender, and Brad Permar, Assistant Public Defender, Bartow, for Appellee.
*870 VILLANTI, Judge.
The State appeals the trial court's order granting Wallie Witherspoon's motion to suppress a baggie containing cocaine and marijuana seized from his mouth after he consented to a pat-down search. Because there was probable cause to believe that there was contraband in Witherspoon's mouth, we reverse.
At about midnight on October 8, 2004, a police officer saw Witherspoon walk across 5th Avenue South in St. Petersburg. The officer pulled his patrol car off the road and approached Witherspoon. The officer told Witherspoon that he was conducting field interrogations and wanted to ask a few questions. Witherspoon agreed. After talking for awhile, the officer asked Witherspoon if he could pat him down. Witherspoon again agreed. During the pat-down search, the officer felt what he believed to be a small baggie of marijuana in Witherspoon's pants pocket. The officer testified that he "felt a bulging, consistent with something that usually marijuana is packaged in" and that the bulge felt consistent with what could "possibly be drugs."
The officer did not immediately reach into Witherspoon's pocket or order him to remove the object from his pocket. Instead, he first asked Witherspoon what the bulge was, and Witherspoon admitted that it was marijuana.[1] Because Witherspoon was making the officer nervous with his furtive movements, the officer then decided to call for a back-up unit before searching Witherspoon's pocket. Before the back-up unit arrived, the officer asked Witherspoon to keep his hands on the car. Witherspoon kept moving his hands. According to the officer, Witherspoon "made several movements toward his pocket ... that the marijuana was in." Witherspoon then moved his hand toward his mouth; the officer believed that Witherspoon was putting the contraband in his mouth.
When the back-up unit arrived, the officer reached into Witherspoon's pocket and came up empty-handed. The marijuana the officer previously felt was gone. The officer asked Witherspoon where the marijuana was, and Witherspoon could not respond because his mouth was full. Witherspoon was asked by the officer three or four times to open his mouth, and Witherspoon eventually spit out a baggie containing marijuana and cocaine.
Witherspoon moved to suppress the evidence. The court granted his motion, finding that although Witherspoon consented to a pat down, he withdrew his consent by refusing to open his mouth.
In reviewing a motion to suppress, the standard of review for the trial court's application of the law to its factual findings is de novo. Bautista v. State, 902 So.2d 312, 314 (Fla. 2d DCA 2005). However, this court must "defer to the factual findings of the trial court that are supported by competent, substantial evidence." Id. (quoting Cillo v. State, 849 So.2d 353, 354 (Fla. 2d DCA 2003)).
The officer's initial contact with Witherspoon is a classic example of a consensual citizen encounter. See Augustin v. State, 666 So.2d 218, 220-21 (Fla. 2d DCA 1995) (describing the typical consensual citizen encounter as a voluntary meeting of two or more people in a public place when an officer "merely approach[es] an individual on the street or in another public place, by asking him if he is willing to answer some questions.... No member of the meeting is compelled to attend" the officer's "invocation of his or her freedom of *871 public assembly."). The officer parked next to the road, he was not blocking Witherspoon, he approached Witherspoon alone, he asked Witherspoon to speak with him, and Witherspoon agreed. During a consensual encounter, a citizen may comply with a police officer's requests or ignore them. Because the citizen is free to leave, constitutional safeguards are not invoked. Mayhue v. State, 659 So.2d 417, 418 (Fla. 2d DCA 1995) (citing Popple v. State, 626 So.2d 185, 186 (Fla.1993)).
During the officer's conversation with Witherspoon, he asked for consent to pat him down. An officer need not have a reasonable suspicion of criminal activity before seeking consent to search. Watts v. State, 788 So.2d 1040, 1042 (Fla. 2d DCA 2001). The record supports the trial court's finding that Witherspoon voluntarily consented to a pat down.
During the pat down, the officer felt what he believed could "possibly" be a small baggie of marijuana in Witherspoon's pants pocket. At this point, the officer probably did not have the authority to either reach into Witherspoon's pocket or order Witherspoon to remove the object from his pocket. See E.B. v. State, 866 So.2d 200, 203 (Fla. 2d DCA 2004) ("[I]n the absence of additional circumstances which would justify a more complete search, consent to a mere patdown does not include consent to reach into the pockets of a suspect and retrieve the contents."); Rodriguez v. State, 807 So.2d 130, 131-32 (Fla. 2d DCA 2002) (discussing how to justify seizure under the plain-feel doctrine, an officer's testimony must establish that he immediately knew the objects in the defendant's pocket were drugs). However, the officer did not reach into Witherspoon's pocket or order him to remove the object from his pocket at that time. Instead, he asked Witherspoon what the bulge was, and Witherspoon admitted that it was marijuana.
Witherspoon's admission that the bulge in his pocket was marijuana gave the officer probable cause to believe that the item in Witherspoon's pocket was contraband. See Doctor v. State, 596 So.2d 442 (Fla.1992) (finding that an officer searching a person for weapons had probable cause to seize cocaine based on the totality of the circumstances). Because the officer had probable cause, he was justified in reaching into Witherspoon's pocket.
When the search of the pocket revealed nothing, the officer ordered Witherspoon to spit out the contents of his mouth. "Generally, in order for an officer to direct a person to spit out the contents of his or her mouth, the officer must have probable cause to arrest the person and to conduct a lawful search incident to that arrest." Coney v. State, 820 So.2d 1012, 1014 (Fla. 2d DCA 2002). An officer's mere suspicion that a person is carrying illegal drugs in his mouth is not enough. Id. (citing Cummo v. State, 581 So.2d 967, 968 (Fla. 2d DCA 1991)). The fact that a defendant has an unknown object in his mouth is also not enough. Id. Here, the officer had more than a mere suspicion. The officer felt a bulge in Witherspoon's pocket he believed to be marijuana. Witherspoon admitted that it was marijuana. The officer then saw Witherspoon moving his hand from his pocket to his mouth, the bulge in Witherspoon's pocket was gone upon the officer's search, and Witherspoon's mouth was full. All of these circumstances combined to give the officer probable cause to order Witherspoon to spit out the contents of his mouth.
Once the officer had probable cause, Witherspoon could no longer withdraw consent to the search. See Smith v. State, 753 So.2d 713, 715 (Fla. 2d DCA 2000) (invalidating a seizure of contraband in a *872 defendant's mouth because the defendant was either denying or withdrawing his consent to be searched by obscuring the officer's view with his tongue but noting that the case did not involve a search based upon either probable cause or a reasonable suspicion). Accordingly, we reverse the trial court's order suppressing the marijuana and cocaine spit from Witherspoon's mouth and remand for further proceedings.
Reversed and remanded.
ALTENBERND and NORTHCUTT, JJ., concur.
NOTES
[1] This fact is strangely missing from the trial court's finding of facts in its order. However, it is very significant and undisputed evidence from the officer.