946 So.2d 1191 (2006)
Jermaine WILLIAMS, Appellant,
v.
STATE of Florida, Appellee.
No. 4D05-2722.
District Court of Appeal of Florida, Fourth District.
December 27, 2006.
Edward de R. Cayia of Edward de R. Cayia, P.A., Fort Lauderdale, for appellant.
*1192 Charles J. Crist, Jr., Attorney General, Tallahassee, and Jeanine M. Germanowicz, Assistant Attorney General, West Palm Beach, for appellee.
WARNER, J.
In this appeal of his conviction, the appellant, Jermaine Williams, claims that the trial court erred in denying his motion to dismiss for speedy trial violation where he alleges he was taken into custody in 2000 but not charged until 2003. Because the trial court determined based upon disputed facts that he was not taken into custody on state charges in 2000, the speedy trial period did not commence. Even if his 2000 arrest was on state charges, Florida Rule of Criminal Procedure 3.191 prevented the commencement of speedy trial time in this case because Williams remained in federal custody until he was returned to Florida to face state charges. The trial court correctly denied his motion for discharge, and we affirm his conviction and sentence.
In the early morning hours of October 20, 2000, the Coral Springs police responded to an attempted robbery of an armored car where security guards were shot. Shortly thereafter, FBI agents arrived on the scene. At the hearing on the motion to dismiss, the Coral Springs detectives testified that the agents and the detectives jointly worked the investigation.
Later on the same day, the detectives received information that a suspect might be obtaining treatment at a local hospital. A Coral Springs officer and an FBI agent went to the hospital to investigate the possible suspect, who turned out to be Williams. The Coral Springs detective testified that the FBI normally takes the lead in any bank robbery, so the investigation was a joint one.
At the hospital, the detective recognized Williams from previous encounters and began conducting an interview. When the doctor medically cleared Williams, the detective asked Williams to come back to the station with them. However, the detective testified that Williams was free to leave at that point.
Williams accompanied the detective and the FBI agent back to the Coral Springs Police station where he was questioned. He was not taken to FBI headquarters in Miami, because the Coral Springs location was closer. When they arrived at the station, the detective placed Williams in an interview room, read him his Miranda rights, and began to interview him. The detective who interrogated Williams testified that after the interview was completed, another Coral Springs detective, Ferm, handcuffed and arrested Williams. However, Ferm denied that he ever placed Williams under arrest for state law violations. All of the detectives testified that they believed that the FBI was taking the lead as it would be a federal case first.
The FBI agent involved in the interrogation testified that given the level of violence in the robbery, it would become a federal case. A decision to arrest Williams was made early on when they were interviewing Williams. After the interviews were complete, the FBI agents took custody of Williams. He was transported to the Fort Lauderdale city jail, which had a contract with the federal government to hold federal prisoners. The FBI agent testified that Williams was not actually arrested or booked by the Coral Springs Police Department (CSPD). Instead, FBI agents completed the paperwork necessary to drop federal prisoners off in the city lockup, where Williams was kept overnight and transported to federal court for a first appearance hearing in the morning.
Williams was charged and prosecuted for federal charges, and in 2002 was sentenced to 16.6 years in federal prison. On February 5, 2003, the state charged *1193 Williams with state charges arising out of the incident. Williams filed a motion to discharge pursuant to Florida Rule of Criminal Procedure 3.191, alleging that he was first in custody for purposes of that rule in October 2000, because he had been arrested by the State of Florida at that time. Therefore, Williams claimed that the speedy trial time had run.
After hearing extensive evidence, the trial court found that the investigation of the robbery was a joint investigation conducted by the CSPD and the FBI. Within eight hours the U.S. Attorney's Office had authorized federal prosecution. Williams volunteered to accompany the detective and the FBI agent to the police station. Therefore, he was not in custody or under arrest at that time. Further, the court found that Williams was never arrested by the CSPD. The court reasoned that the investigatory detention of Williams was for federal prosecution, and at the end of the investigation both Williams and his co-defendant, Espinueva, were taken into custody by the FBI and transported to the Fort Lauderdale city jail, which had a contract with the federal government, rather than being booked into the Broward County jail where they would have gone were they being held on state charges. Because the court found that Williams was never in custody on state charges, it found that the speedy trial time never commenced until charges were filed in 2003. It therefore denied the motion.[1]
After the denial of the motion, Williams pled to the charges, reserving his right to appeal the denial of his motion to dismiss. He was sentenced, and appeals his state convictions and sentences.
Williams argues that the state speedy trial period commenced on October 20, 2000, when he was arrested by the CSPD. He maintains that the trial court erred in denying his motion to discharge because the state neglected to prosecute the case when it filed the information over 175 days after October 20, 2000. The state, on the other hand, contends that he was not taken into custody on state charges, and therefore the state speedy trial time did not commence until Williams was released by the federal government for state prosecution.
Florida Rule of Criminal Procedure 3.191(a) states, in pertinent part: "Except as otherwise provided by this rule, and subject to the limitations imposed under subdivisions (e) and (f), every person charged with a crime shall be brought to trial within 90 days of arrest if the crime charged is a misdemeanor, or within 175 days of arrest if the crime charged is a felony." For purposes of rule 3.191, a person is taken into custody: 1) when the person is arrested as a result of the conduct or criminal episode that gave rise to the crime charged, or 2) when the person is served with a notice to appear in lieu of physical arrest. Fla. R.Crim. P. 3.191(d).
Rule 3.191(e) governs prisoners held outside of Florida's jurisdiction and provides, in relevant part:
A person who is in federal custody or incarcerated in a jail or correctional institution outside the jurisdiction of this state or a subdivision thereof, and who is charged with a crime by indictment or information issued or filed under the laws of this state, is not entitled to the benefit of this rule until that person returns or is returned to the jurisdiction of the court within which the Florida charge is pending and until written notice of the person's return is filed with the court and served on the prosecutor. *1194 For these persons, the time period under subdivision (a) commences on the date the last act required under this subdivision occurs. . . .
Thus, rule 3.191(e) prevents the rule-based speedy trial period from running while the accused is in federal custody. See State v. Mitchel, 768 So.2d 1223, 1224 (Fla. 3d DCA 2000). Here, even assuming that Williams was first arrested by the CSPD, and that the arrest constituted a state arrest, the FBI took custody of Williams that very day. Thus, the Florida speedy trial period did not commence until after he was returned to Florida.
However, in this case the trial court made factual findings that Williams was not arrested by the CSPD. An appellate court must defer to the factual findings of the trial court that are supported by competent substantial evidence. Bautista v. State, 902 So.2d 312, 313-14 (Fla. 2d DCA 2005). Here, the court concluded that the Coral Springs detectives were merely assisting the FBI in effectuating an arrest. There is competent substantial evidence to support these factual findings, even though some conflicting evidence was offered. We therefore defer to the findings of the trial court. That means that Williams was never in state custody for purposes of the commencement of the speedy trial rule.
For these reasons, we conclude that the trial court correctly denied the motion to dismiss on speedy trial grounds and affirm Williams' convictions and sentences.
Affirmed.
STEVENSON, C.J., and TAYLOR, J., concur.
NOTES
[1] The court denied the motion as it applied to Williams' co-defendant also, and our court has recently affirmed the denial of the motion as it applied to him. See Espinueva v. State, 946 So.2d 624 (Fla. 4th DCA 2007).