977 So.2d 789 (2008)
James GREIDER, Appellant,
v.
STATE of Florida, Appellee.
No. 2D06-592.
District Court of Appeal of Florida, Second District.
April 4, 2008.
*790 James Marion Moorman, Public Defender, and William L. Sharwell, Assistant Public Defender, Bartow, for Appellant.
Bill McCollum, Attorney General, Tallahassee, and Danilo Cruz-Carino, Assistant Attorney General, for Appellee.
CASANUEVA, Judge.
James Greider appeals his conviction for possession of crack cocaine and drug paraphernalia. Following the denial of his dispositive motion to suppress, Mr. Greider entered a plea expressly reserving his right to appeal. Mr. Greider now asserts reversible error in the denial of the motion to suppress. We reverse and remand for discharge because the trial court erred in denying Mr. Greider's motion to suppress.[1]

*791 Factual and Procedural Background
In January 2005, Officer Todd Perna of the Sarasota Police Department was on patrol in Bay Island Park around 11:00 p.m. when he observed a small black sedan parked in a legal parking space. Vehicles are permitted in the park until midnight. The officer testified there were "towels rolled up in the window so you couldn't see inside the vehicle" and described the towels hanging "like curtains" outside of the car on both sides. The officer parked directly behind the black sedan but did not activate the overhead lights on his police car. Officer Perna testified that he was concerned for the welfare of any potential occupants. On cross-examination, defense counsel asked the officer if he needed to refresh his memory. After looking at the probable cause affidavit that he prepared, Officer Perna clarified that he actually first approached the passenger side of Mr. Greider's car to determine if anyone was inside. Mr. Greider rolled down the passenger side window and responded that he was fine but that someone in a red car had chased him from Manatee County. The officer testified that Mr. Greider said the red car was now parked on the other side of the bridge. Having just patrolled that side of the bridge the officer knew there was no red car parked over there. Officer Perna testified that this initial discussion through the passenger window dispelled his concerns about Mr. Greider's well-being. The officer testified that although it was strange that Mr. Greider was in a car with towels covering the windows, he did not think that Mr. Greider had committed or was about to commit a crime. Officer Perna testified that he then walked around to the driver's side of the car and ordered Mr. Greider to roll down the window, causing the towel on that side of the vehicle to fall. The officer shined his flashlight into the car and saw what appeared to be a glass crack pipe in the center console next to the gear shift. Because the officer was alone, he told Mr. Greider to keep his hands in the air for officer safety. The officer then observed a small opaque orange vial in between Mr. Greider's legs that resembled a lip balm container. The officer testified that Mr. Greider fumbled with the vial between his legs and then put the vial inside a compartment in the driver's side door. The officer opened Mr. Greider's door and directed him to step out. The officer looked into the door's compartment, observed crack cocaine pieces, and noticed that the top was off the orange vial. The officer arrested Mr. Greider for possession of crack cocaine and drug paraphernalia.
After argument from both defense counsel and the state, the trial court announced its findings:
It's clear from the evidence that was presented here today that the officer approached the Defendant's vehicle out of concern because of the unusual manner in which the car  where the car presented itself with the towels sticking out of the windows, and parked late at night. I think the officer had reason to check on the welfare of the occupant. There really was no testimony concerning whether he was blocking his way in leaving the park. But I think the officer would have been remiss if he would have ignored the rather unusual way in which the car was situated and the way it presented itself with the towels in the window. The officer did the right thing by approaching to see if the defendant was okay or what was going on in the vehicle at the time of night.
Once the Defendant lowered the window, once the officer noticed the items *792 that were clearly paraphernalia' in plain view, he was justified in asking the defendant to exit the vehicle. At that point, he was justified in arresting him and doing any search incident to arrest. So I am going to deny the motion to suppress the physical evidence.
The trial court declared that the motion was dispositive and Mr. Greider entered his plea, expressly reserving his right to appeal. This appeal followed.

Standard Of Review
Appellate review of a motion to suppress is a mixed question of law and fact. Bautista v. State, 902 So.2d 312, 314 (Fla. 2d DCA 2005). Deference is given to the trial court's factual findings if they are supported by competent and substantial evidence. Id. (citing Cillo v. State, 849 So.2d 353, 354 (Fla. 2d DCA 2003)).

Analysis
"The Fourth Amendment to the United States Constitution and section 12 of Florida's Declaration of Rights guarantee citizens the right to be free from unreasonable searches and seizures." Golphin v. State, 945 So.2d 1174, 1179 (Fla.2006). Because not all encounters between a law enforcement officer and a citizen constitute a seizure, it is first necessary to determine whether a constitutionally recognized "seizure" occurred.
In Popple v. State, 626 So.2d 185, 186 (Fla.1993), our supreme court defined three levels of police-citizen encounters.
The first level is considered a consensual encounter and involves only minimal police contact. During a consensual encounter a citizen may either voluntarily comply with a police officer's requests or choose to ignore them. Because the citizen is free to leave during a consensual encounter, constitutional safeguards are not invoked.
Id. Next on the escalating hierarchy of police-citizen encounters is "an investigatory stop." See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). For a police officer to lawfully detain a citizen, "an investigatory stop requires a wellfounded, articulable suspicion of criminal activity. Mere suspicion is not enough to support a stop." Popple, 626 So.2d at 186. The third and final level of a police-citizen encounter "involves an arrest which must be supported by probable cause that a crime has been or is being committed." Id.
Here, the record establishes that Officer Perna and Mr. Greider were involved in two police-citizen encounters. Each must be examined to determine whether the officer's contact comported with constitutional requirements. "Items obtained in violation of Florida's Constitutional protection shall be excluded from evidence if such items would be excluded pursuant to United States Supreme Court jurisprudence." Golphin, 945 So.2d at 1180.
The first police-citizen encounter began when Officer Perna approached Mr. Greider's car and made contact with Mr. Greider from the passenger side. This consensual encounter concluded after the initial conversation with Mr. Greider which dispelled the officer's concern for his safety. We agree with the trial court that the welfare check was appropriate. It is important to recall the officer's testimony that after completing this welfare check, he didn't think any criminal activity had occurred or was about to occur.
The second police-citizen encounter occurred when Officer Perna walked around the vehicle to the driver's side. Officer Perna testified that he ordered Mr. Greider to roll down the window, causing the towel that obscured his view to fall. *793 He then shined his flashlight into the car observing what appeared to be, in his experience, a glass crack pipe in the center console next to the gear shift.
We do not ignore Officer Perna's testimony that he possessed suspicions regarding the unusual circumstance of the towels covering the windows, even after he had been assured all was well. However, a suspicion, by itself, may reflect well on the officer's instincts but it does not meet the Fourth Amendment's requirement of "at least reasonable suspicion that the individual seized is engaged in wrongdoing." Id. Here, there was no evidence of any criminal activity. This event was a second level citizen encounter, an investigatory stop, undertaken without appropriate legal justification.
Within the meaning of the Fourth Amendment, in the absence of a formal arrest, a seizure occurs:
[O]nly if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. Examples of circumstances that might indicate a seizure, even where a person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.
Golphin, 945 So.2d at 1182 (quoting United States v. Mendenhall, 446 U.S. 544, 554-55, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980) (plurality opinion)).
Officer Perna testified that Mr. Greider did not roll the driver-side window down voluntarily but that he ordered him to lower it. It was at this point that the glass pipe was in plain view. We conclude that Officer Perna's demand resulted in a seizure because a reasonable person in Mr. Greider's position would not have felt free to disregard the officer's command, end the encounter, and drive away. See Bautista, 902 So.2d 312 (holding that a fraudulent identification, discovered only after an officer's demand that the defendant produce a wallet from his pocket, should have been suppressed as the product of an unlawful seizure).
We make two observations. We first note that the court's ruling did not distinguish the interaction on the passenger side of the vehicle from that which occurred on the driver's side. The trial court concluded that "[o]nce the Defendant lowered the window, once the officer noticed the items that were clearly paraphernalia in plain view he was justified in asking the defendant to exit the vehicle." However the trial court's conclusion is not supported by competent and substantial evidence. In comparing the trial court's ruling with the officer's testimony, we conclude the trial court mistakenly overlooked the fact that the paraphernalia was discovered only after the police officer had intruded into Mr. Greider's privacy.[2] The trial court's ruling finds probable cause by improperly conflating the passenger side consensual welfare check into the driver's side nonconsensual lowering of the window. The record reflects that it was the unlawful seizure of Mr. Greider from the driver's side of the car that ultimately resulted in the plain view of the paraphernalia.
*794 We also note that there are no other facts suggesting that Mr. Greider had committed, was committing, or was about to commit a crime. While the conduct of sitting in an automobile with towels covering the windows is unusual and may cause an officer to be suspicious of such behavior, the law requires more than mere suspicion  it requires that the conduct create an articulable suspicion of criminal activity. See § 901.151(2), Fla. Stat. (2005) (authorizing an investigatory stop when circumstances "reasonably indicate that such person has committed, is committing, or is about to commit a [crime]"); Popple, 626 So.2d at 186 (requiring a "well-founded, articulable suspicion of criminal activity" to justify an investigatory stop under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).

Conclusion
In sum, a proper analysis of the case at bar requires partitioning the encounter continuum described by Officer Perna into two police-citizen encounters. This approach recognizes that the second encounter was an unlawful detention and invoked constitutional safeguards. We agree with the trial court that Officer Perna had a duty to check on Mr. Greider. However, once it was determined that Mr. Greider was "okay" and not involved in any criminal activity, the officer lacked the proper authority to order Mr. Greider to lower his window. We conclude and hold that the illegal detention and search of Mr. Greider were constitutionally invalid actions by Officer Perna and that the motion to suppress should have been granted.
Reversed and remanded.
FULMER and WALLACE, JJ., concur.
NOTES
[1] Mr. Greider also appeals a cost-related sentencing error. In light of our disposition reversing and remanding the case, the alleged sentencing error is moot.
[2] We recognize there is a reduced expectation of privacy in a car because cars are readily mobile and also are highly regulated by various government agencies and police authorities. See California v. Carney, 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985). While this reduced expectation of privacy may permit a search of a vehicle without a warrant, it does not allow a search absent probable cause. Id. at 392, 105 S.Ct. 2066.