MORRIS, Judge.
Adam Dermio appeals his judgments and sentences for armed trafficking in illegal drugs (four to fourteen grams), possession of a firearm by a convicted felon, possession of a controlled substance with intent to sell or deliver, possession of cannabis (under twenty grams), and possession of drug paraphernalia. Dermio filed a motion to suppress which addressed evidence obtained as a result of an encounter between Dermio and a Manatee County sheriffs deputy as well as Dermio’s confession. The motion was denied. Thereafter, Dermio entered a no contest plea to the charges while specifically reserving his right to appeal the denial of the motion. For the reasons set forth herein, we affirm.[1]
I. Background
In March 2010, a Manatee County sheriffs deputy came across Dermio’s car parked in the parking lot of a local bar around 3:30 in the morning. The ear’s motor was running and the lights were on. The deputy pulled in behind Dermio’s car and turned on her emergency lights. Because there was a barrier in front of Der-mio’s car, he would not have been able to back out of the parking space without hitting the deputy’s car. As the deputy got out of her car and walked up to Dermio’s car, she noticed that Dermio, who was sitting in the driver’s seat, had his head cocked to the left side and had a cell phone lodged between his shoulder and cheek. However, the deputy noted that Dermio’s eyes were closed and that he appeared to be asleep. The deputy shined her flashlight in the window, but when Dermio did not respond, the deputy tapped her flashlight on the window. At that point, Der-mio awoke but he seemed “really out of it” and incoherent. The deputy then asked Dermio to roll down the window. When Dermio did not respond, the deputy identified herself as being with the sheriffs office and asked him a second time to roll down the window. Still Dermio did not respond. After the deputy made a third request to roll down the window with no response and because Dermio still appeared to be incoherent, the deputy testified that she opened the door to the car because she was concerned for Dermio’s safety. Upon opening the door, the deputy smelled the odor of burnt marijuana and observed a metal pipe on the center console. Eventually, Dermio’s car was searched, and in addition to the pipe, a firearm, marijuana, and varying types and amounts of other drugs[2] were located. *554 Dermio was transported to the sheriffs office, and after being advised of his Miranda [3] rights, he made incriminating statements.
The deputy testified that while she was attempting to talk to Dermio, his eyes were droopy and the deputy had a suspicion that a crime had been committed, to wit: driving under the influence. The deputy testified that her suspicion was based on the facts that the car was running, the lights were on, and Dermio was asleep behind the wheel. On cross-examination, the deputy acknowledged that she had observed no traffic infractions and that Dermio’s car was legally parked. When defense counsel inquired why the deputy conducted “an investigatory stop,” the deputy responded that the “original purpose was to make sure that [Dermio’s] safety was okay, that he was fine. But also in my head was this is a possible DUI.” The deputy further testified that prior to opening the door to Dermio’s car, she did not smell any odor of alcohol or marijuana.
A detective with the sheriffs office conducted the interview with Dermio at the sheriffs office. The deputy who transported Dermio to the sheriffs office testified that she overheard the detective telling Dermio that if he provided truthful statements, she [the detective] could help him. According to the deputy, the detective “didn’t define help, but she did say she could help him.” Dermio subsequently made incriminating statements. The interview was not recorded.
The detective testified that she told Der-mio that “depending on what information he gave, ... I might be able to talk to the judge” and that she might be able to “help [him] out with something.” The detective testified that the Sheriffs Department policy was to “let [defendants] know if there’s anything that we can do that comes of the information [they] give us, then we will talk at a sentencing hearing.” However the detective clarified that she did not make any promises to Dermio and specifically told him there were “[n]o promises.” The detective testified she did not make any representations to Dermio about what type of sentence he could receive.
In the order denying Dermio’s motion to suppress, the court found that the deputy who initially discovered Dermio approached his car to determine if he needed medical attention and that “[the deputy] investigated further ‘for his safety.’ ” The circuit court, relying on Mincey v. Arizona, 437 U.S. 385, 392-93, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978), held that the deputy’s conduct did not violate the Fourth Amendment prohibition against unreasonable searches and seizures because officers may make a warrantless entry and search where they believe someone is in need of immediate aid.
Addressing Dermio’s confession, the circuit court credited the detective’s testimony that while she told Dermio that she would speak at his sentencing hearing, she did not make any promises to him. The circuit court also noted that there was no evidence of “promises to interact with the State and no quid pro quo.”
Subsequent to the denial of his suppression motion, Dermio agreed to enter a no contest plea to the charges. At the change of plea hearing, Dermio’s counsel notified the court:
We have agreed that the motion to suppress in this case, upon which there is previously entered an order denying the motion, was dispositive as to the search and seizure issue, and we are expressly reselling our right to appeal *555 that order denying the dispositive motion to suppress. And I state that because in the order denying the motion, which came out sometime after the motion was filed, it did not address the dispositive nature of the motion. So it’s something that we agreed upon, that it was a dispositive motion.
The circuit court inquired whether the State agreed with defense counsel’s representation, but the State did not respond to the question, instead addressing the issue of minimum mandatory sentencing. The circuit court eventually found “that the motion to suppress that was previously filed ... is a dispositive motion.” Neither the circuit court nor the State clarified whether the motion was dispositive in its entirety or whether it was dispositive, as defense counsel represented, only on the search and seizure issue.
After Dermio’s plea was accepted, the circuit court adjudicated him guilty and sentenced him to a ten-year minimum-mandatory sentence for armed trafficking in illegal drugs (four to fourteen grams), three years on the charge of possession of a controlled substance with intent to sell or deliver, and to time served on the remaining charges.
II. Analysis
Our standard of review on a motion to suppress is a mixed question of law and fact; we give deference to the circuit court’s factual findings if they are supported by competent, substantial evidence. See Greider v. State, 977 So.2d 789, 792 (Fla. 2d DCA 2008) (citing Bautista v. State, 902 So.2d 312, 314 (Fla. 2d DCA 2005)).
A. There was no unlawful search and seizure.
Because the Fourth Amendment prohibits unreasonable searches and seizures, it is necessary to determine whether a seizure occurred. See id.
In Popple v. State, 626 So.2d 185, 186 (Fla.1993), our supreme court defined three levels of police-citizen encounters.
The first level is considered a consensual encounter and involves only minimal police contact. During a consensual encounter a citizen may either voluntarily comply with a police officer’s requests or choose to ignore them. Because the citizen is free to leave during a consensual encounter, constitutional safeguards are not invoked.
Id. Next on the escalating hierarchy of police-citizen encounters is “an investigatory stop.” See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). For a police officer to lawfully detain a citizen, “an investigatory stop requires a well-founded, articulable suspicion of criminal activity. Mere suspicion is not enough to support a stop.” Popple, 626 So.2d at 186. The third and final level of a police-citizen encounter “involves an arrest which must be supported by probable cause that a crime has been or is being committed.” Id.
Greider, 977 So.2d at 792.
It is well recognized that police officers may conduct welfare checks and that such checks are considered consensual encounters that do not involve constitutional implications. Id. (recognizing that officer’s making initial contact with driver of car who was lawfully parked late at night in a park was an appropriate welfare check where officer testified he was concerned because towels were obscuring the car windows); Dep’t of Highway Safety & Motor Vehicles v. Luttrell, 983 So.2d 1215, 1217 (Fla. 5th DCA 2008) (opining that officer’s making contact with driver of parked ear supported “a finding of a consensual encounter” and that “[t]he officer *556 was not required to negate each and every possible act or circumstance that might transform a consensual encounter into an investigatory stop”).
Here, the deputy clearly testified that based on the time, location, Dermio’s appearance, the fact that the car motor was running, and the fact the lights were on, she was concerned for Dermio’s safety. The deputy’s classification of the stop as “investigatory” in nature does not control our disposition because it is clear the deputy was initially conducting a welfare check. Thus the interaction began as a consensual encounter. See Greider, 977 So.2d at 792.
We are cognizant that the position of the deputy’s car prevented Dermio from leaving and that the deputy had activated her emergency lights. But in this case, those factors do not lead us to conclude that a seizure occurred when the deputy initially approached because Dermio was asleep and was thus not aware that the deputy had pulled in behind him and activated her emergency lights. Dermio simply had not submitted to a display of police authority. Cf. G.M. v. State, 19 So.3d 973, 978-83 (Fla.2009) (discussing cases involving activation of emergency lights or police officer’s blocking a person’s vehicle and holding that appellant was not seized until he became aware of and submitted to police authority). Indeed, even after Dermio was awakened by the deputy, there was no evidence as to whether he was aware of the deputy’s presence as the deputy testified he was incoherent, “out of it,” and unable to follow her instructions.
Yet, even though the initial stop was consensual, that does not end our analysis because the deputy went on to ask Dermio to roll down the window on multiple occasions and the deputy eventually opened the door to Dermio’s car. This court has repeatedly held that where an officer orders an individual to exit a vehicle, an investigatory stop occurs. See, e.g., State v. Jimoh, 67 So.3d 240, 241-42 (Fla. 2d DCA 2010); Parsons v. State, 825 So.2d 406, 408 (Fla. 2d DCA 2002); Danielewicz v. State, 730 So.2d 363, 364 (Fla. 2d DCA 1999). We have extended that principle to situations where an officer commands an occupant of a car to roll down the window. See Greider, 977 So.2d at 792-93.
However Greider does not control this case because there, during the officer’s initial welfare check, the officer’s concern for the occupant’s safety had subsided and the officer testified he “didn’t think any criminal activity had occurred or was about to occur.” Id. at 792. In contrast, the deputy’s concern for Dermio’s safety in this case had not yet been alleviated because Dermio continued to be incoherent and “out of it.” Consequently, the deputy’s requests for Dermio to roll down the window did not transform the consensual encounter into an investigatory stop.
For the same reason, we do not believe the deputy’s conduct in opening Dermio’s car door transformed the consensual encounter into an investigatory stop. Rather, we hold that under the circumstances of this case, the deputy’s opening of the car door was merely a continuation of the welfare check. Cf. Parsons, 825 So.2d at 409 (noting that nothing suggested deputy still believed appellant was intoxicated at the time he learned appellant was a sex offender); Danielewicz, 730 So.2d at 364 (noting that although officer testified he suspected appellant was intoxicated, he did not testify that he was concerned for appellant’s safety and he acknowledged that people sleep in their cars without criminal implication). Indeed, the fact that Dermio continued to be incoherent and “out of it” despite the deputy’s repeated attempts to communicate with him suggested he might have been in need of assistance, thereby permitting the deputy to enter Dermio’s *557 car under the emergency exception to the warrant requirement. See Mincey, 437 U.S. at 392, 98 S.Ct. 2408 (recognizing emergency exception); Vitale v. State, 946 So.2d 1220, 1221 (Fla. 4th DCA 2007) (“ ‘[T]he Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid.’” (quoting Mincey, 437 U.S. at 392-93, 98 S.Ct. 2408)).
Based on the deputy’s concern for Der-mio’s safety and the fact that Dermio was unresponsive to the deputy’s attempts to communicate with him, we hold that no unreasonable search or seizure occurred prior to the deputy opening the car door and smelling the odor of marijuana. The deputy was merely conducting a welfare check and her conduct did not violate constitutional principles. Accordingly, we affirm the denial of that portion of the suppression motion dealing with the search and seizure issue.
B. Dermio failed to preserve the challenge to his confession, but even if it had been properly preserved, he would not be entitled to relief.
We have previously recognized that orders denying motions to suppress confessions are not dispositive unless stipulated to by the parties. England v. State, 46 So.3d 127, 129 (Fla. 2d DCA 2010). Dermio argues that the parties did so stipulate, but the record reflects that Dermio’s counsel specifically told the circuit court that there was a stipulation as to the dis-positive nature of the search and seizure issue. Although neither the circuit court nor the State made any specific reference to the parameters of the stipulation, defense counsel’s specific reference to the search and seizure issue indicates the stipulation did not extend to the suppression motion in its entirety. We simply do not believe that this is a case where the record is “murky” as to the breadth of the stipulation. Cf England, 46 So.3d at 129 (finding record “murky” where there were two separate suppression motions and neither the parties nor the court made any differentiation between motions when discussing stipulation). Consequently, the portion of the order dealing with Dermio’s confession was not dispositive and Dermio cannot raise that issue on appeal.
Yet, even if that portion of the order was subject to the stipulation, thereby entitling Dermio to challenge it on appeal, Dermio is not entitled to relief. We have previously held that confessions are not deemed freely and voluntarily given if they have been elicited by direct or implied promises of leniency. State v. Walter, 970 So.2d 848, 851 (Fla. 2d DCA 2007). Thus where an officer offers to “help” or “fix things” without clarification on the limits of the officer’s authority, courts have found that a defendant’s resulting confession was involuntary. See Day v. State, 29 So.3d 1178, 1181 (Fla. 4th DCA 2010); Ramirez v. State, 15 So.3d 852, 856 (Fla. 1st DCA 2009).
But here, the detective testified that while she told Dermio that she would speak for him at his sentencing hearing and “do what she c[ould],” she could “not make any promises.” The detective’s statement was not an unlimited offer to help but merely an offer to make Dermio’s cooperation known to the circuit court. Such a statement by a law enforcement officer does not render a- subsequent confession involuntary. See Walter, 970 So.2d at 852 (relying on Maqueira v. State, 588 So.2d 221, 223 (Fla.1991)); see also State v. Carroll, 103 So.3d 929, 931 (Fla. 2d DCA 2012). Accordingly, even if we had found this issue to have been properly preserved, *558 we would affirm the circuit court’s denial of the motion.
Affirmed.
VILLANTI and WALLACE, JJ., Concur.

. Beyond the challenge to the denial of the suppression motion, Dermio also argues on appeal that his adjudication and sentencing for the drug-related offenses were fundamentally erroneous because section 893.13, Florida Statutes (2009), is facially unconstitutional. However, the Florida Supreme Court has ruled that section 893.13 is constitutional, State v. Adkins, 96 So.3d 412 (Fla.2012), and therefore we do not further address Dermio's argument on that issue.

. Specifically, seventy-five Xanax pills, ninety-one roxicodone pills, and fifty-eight methadone pills were discovered.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694(1966).