# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D17-2545

_____

BLAKE EDWIN TRIPP,

    Appellant,

    v.

STATE OF FLORIDA,

    Appellee.

_____

On appeal from the Circuit Court for Bay County.
Michael C. Overstreet.

July 9, 2018

B.L.THOMAS, C.J.

An intoxicated pedestrian stumbling across a public thoroughfare in Bay County attracts the attention of a citizen, who reports the pedestrian to the sheriff's office. A county ordinance prohibits public intoxication that creates a safety risk. Law enforcement officers observe the pedestrian, Appellant, having great difficulty "keeping his bearings." The officers talk to Appellant, smell alcohol on his person, and ask Appellant for identification. Appellant is able to communicate with the officers, who check his identification as part of the investigation for a violation of the ordinance. After noticing a bulge in Appellant's front pocket, the officers ask Appellant if he possesses a firearm. Appellant tells the officers he has a gun tucked in the small of his back. Because Appellant does not have a concealed-carry permit,

he is arrested and charged with the third-degree felony of carrying a concealed firearm.

Appellant filed a motion to suppress the evidence of the concealed firearm, arguing that the officers were conducting a welfare check, which was a consensual encounter, and the encounter was converted to an unjustified stop when the officers asked him to provide identification. Appellant argued there was insufficient evidence that he was unable to care for his own safety, as was required to support a detention under the ordinance. The State argued that the officers had reasonable suspicion to conduct an investigatory stop for disorderly conduct under *Terry v. Ohio*, 392 U.S. 1 (1968), based on the report of an intoxicated pedestrian and the officers' observation of him.

The court ruled that crossing a highway under the influence of alcohol would cause an officer "to reasonably believe somebody was intoxicated in a public place, doing something that . . . could be injurious to his safety." Appellant pled no contest, reserving the right to appeal the dispositive motion to suppress. The court withheld adjudication of guilt, and placed Appellant on felony probation for eighteen months.

On appeal, Appellant argues there was insufficient reason for the officers to detain him based on the county ordinance, and that even if the detention was valid, the officers conducted an unlawful *Terry* stop by asking if he was carrying a firearm, because they lacked a valid reason to believe he was armed and dangerous. We affirm the denial of the motion to suppress on two alternative grounds: (1) the police had reasonable suspicion to think Appellant had violated the county ordinance, and did not conduct an unlawful search by asking if Appellant had a weapon; and 2) even if the police did not have reasonable suspicion to detain Appellant for violation of the county ordinance, they had the lawful authority to conduct a welfare check on Appellant (despite the testimony of one officer that he was *not* conducting a welfare check). Based on an objective review of the facts, Appellant could have been injured or caused an injury or accident in his intoxicated state, and the officers did not unconstitutionally detain or search Appellant by asking for his license and asking whether he had a weapon.

2

When an officer has reasonable suspicion that an individual has committed, is committing, or is about to commit a crime—including a violation of a criminal ordinance—the officer may temporarily detain the person to ascertain his identity and investigate the circumstances surrounding the suspected criminal activity. § 901.151(2), Fla. Stat. An investigatory stop requires more than mere suspicion; the officer must have a "well-founded, articulable suspicion of criminal activity." *Popple v. State*, 626 So. 2d 185, 186 (Fla. 1993).

The Bay County Code of Ordinances provides that "a person shall be guilty of disorderly conduct if . . . his conduct is likely to cause public danger, alarm, disorder or nuisance, [and] he willfully . . . is in a public place under the influence of an intoxicating liquor or drug in such a condition as to be unable to exercise care for his own safety or the safety of others." Bay Cty. Code of Ordinances 15-46(c)(6). Appellant acknowledges the evidence that he was intoxicated in public, but asserts there was insufficient reason for the officers to believe he was unable to protect his safety.

The officers received a report of public intoxication and witnessed Appellant stumbling in the crosswalk of a busy road. Although there was no traffic at the time, and Appellant did walk across the street in the proper cross walk, one officer said Appellant was "tripping over his feet" and that it was "apparent he couldn't keep his bearings." Another officer indicated he was concerned Appellant was a risk to himself. Although Appellant argues there was no evidence he had fallen down or was unable to speak, the officers' testimony showed they had more than a bare suspicion he was in such a condition as to be a risk to himself. The evidence supports a finding that, under the ordinance, the officers could lawfully detain Appellant on suspicion of disorderly conduct.

Appellant argues that even if the officers were justified in detaining him on suspicion of violating the ordinance, the firearm should be suppressed, because there was insufficient justification for one of the officers to ask Appellant if he had any weapons. Florida's Stop and Frisk law provides that when an officer has

probable cause to believe a person, who has been lawfully temporarily detained, "is armed with a dangerous weapon and therefore offers a threat to the safety of the officer or any other person," the officer may search the person only to the extent necessary to determine whether the person in fact has a weapon. § 901.151(5), Fla. Stat.

In addressing Appellant's arguments, we first note that we find no basis to conclude that law enforcement officers engage in a search by merely asking questions. *Cf. D.A. v. State*, 10 So. 3d 674, 677 (Fla. 3d DCA 2009) (holding, in the context of a consensual encounter, that a question "is neither a search nor a seizure"). And even assuming *arguendo* that the officer's question was the functional equivalent of a *Terry* search, which we do not think it was, the purported search was far less intrusive than the typical pat-down permissible under *Terry* for determining the presence of a weapon. The bulge in Appellant's front pocket was sufficient reason for the officer to ask Appellant if he had a weapon. *See* § 901.151(5), Fla. Stat. (providing that a *Terry* search must be limited only to the extent necessary to discern the presence of a weapon).

Furthermore, even if there were insufficient evidence for the officers to determine Appellant was in violation of the county ordinance, on this record we can affirm the order denying the suppression of the gun on a separate ground. The trial court's ruling was correct, but perhaps for a different reason. *See Caso v. State*, 524 So. 2d 422, 424 (Fla. 1988) ("A conclusion or decision of a trial court will generally be affirmed, even when based on erroneous reasoning, if the evidence or an alternative theory supports it."). Based on these facts, the officers had the lawful authority to conduct a welfare check on Appellant's safety.

"It is well recognized that police officers may conduct welfare checks and that such checks are considered consensual encounters that do not involve constitutional implications." *Dermio v. State*, 112 So. 3d 551, 555-56 (Fla. 2d DCA 2013). And because we must review the facts from the perspective of an objectively reasonable law enforcement officer, the officer's testimony that he was not conducting a welfare check is not dispositive. *Cf. State v. Scott*, 774 So. 2d 794, 795-96 (Fla. 3d

4

DCA 2000) (explaining that validity of searches and seizures under Florida law is construed in conformity with decisions of the United States Supreme Court interpreting the Fourth Amendment, and noting an officer's actions are judged by an objective standard). Here, an objectively reasonable law enforcement officer would have justifiably checked on Appellant's welfare, even without the suspicion that Appellant had violated the Bay County ordinance, based on the citizen's report and the officer's own observations.

Thus, because it was lawful for the officer to check on Appellant's welfare, it was also lawful for the officers to ask Appellant about his identification and whether he had a weapon on his person. Asking for identification during a welfare check does not convert the consensual encounter into a seizure. *See State v. Baez*, 894 So. 2d 115, 116 (Fla. 2004) (concluding officer who responded to a call about a suspicious vehicle, saw the defendant slumped over the steering wheel, knocked on vehicle window to ask if the defendant was all right, requested the defendant's identification, and arrested the defendant after the license check revealed an outstanding warrant, had only engaged the defendant in a consensual encounter). And "[i]t is well-settled that asking a question of a person *not* in custody is neither a search nor a seizure." *D.A.,* 10 So. 3d at 677 (emphasis in original). Therefore, we affirm the trial court's order denying Appellant's motion to suppress.

AFFIRMED.

WOLF and RAY, JJ., concur.

––––––––––––––––––––––––––––––

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

––––––––––––––––––––––––––––––

Andy Thomas, Public Defender, Justin Foster Karpf, Assistant Public Defender, Tallahassee, for Appellant.

Pamela Jo Bondi, Attorney General, Barbara Debelius, Assistant Attorney General, Tallahassee, for Appellee.