555 So.2d 970 (1990)
Craig S. THOMPSON, Appellant,
v.
STATE of Florida, Appellee.
No. 88-02487.
District Court of Appeal of Florida, Second District.
January 26, 1990.
James Marion Moorman, Public Defender, Bartow, and Allyn Giambalvo, Asst. Public Defender, Clearwater, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Carol M. Dittmar, Asst. Atty. Gen., Tampa, for appellee.
*971 PER CURIAM.
Craig Thompson appeals his convictions for possession of cocaine[1] and possession of drug paraphernalia.[2] We find that the contraband was recovered during an unlawful search and seizure, and reverse.
The first of two encounters between Thompson and the arresting officers occurred during a rainstorm in what was described as a "known drug area." Thompson and several other persons had sought shelter beneath a carport. The officers approached the group, asked for identification, and checked for outstanding warrants. Then, because "it is pretty well known that some of the subjects there throw crack cocaine or other types of paraphernalia to the ground," the officers searched the surrounding area. Several pieces of rock cocaine were discovered on the ground three to four feet from where some of the men were standing, and a butcher knife was found in the rafters of the carport. No arrests were made at this time. Later that evening the same officers observed Thompson and another individual standing on a street corner. Upon spotting the officers the two men walked away in separate directions. One officer approached Thompson and asked "if he minded if I checked to see if he had any guns or knives." The officer stated that he had found weapons "in that area before." Thompson told the officer to "go ahead." The patdown revealed no weapons, but the officer felt an object in Thompson's pants pocket. Thompson said this was "nothing," but the officer nevertheless asked if he could check the pocket. Again Thompson said "go ahead." The object was a cocaine pipe.
The initial detention of Thompson was unlawful. Neither his presence in a "high crime" area nor his allegedly evasive actions upon the approach of the officers give rise to a reasonable suspicion of his involvement in criminal activity. Morris v. State, 519 So.2d 706 (Fla. 2d DCA 1988); Johnson v. State, 547 So.2d 699 (Fla. 1st DCA 1989). Furthermore, even a valid stop does not ipso facto warrant a patdown for weapons; the officer must have a reason to believe, not present in the instant case, that the suspect has a weapon on his person. Meeks v. State, 356 So.2d 45 (Fla. 2d DCA), cert. denied, 364 So.2d 892 (Fla. 1978). And once any concern for the officer's safety has been dispelled by a patdown  as it was here  the intrusion cannot be extended to a general search for evidence. Dunn v. State, 382 So.2d 727 (Fla. 2d DCA 1980).
The state argues that appellant consented to the search that produced the pipe. However, consent given after an unlawful stop is presumptively involuntary. Gadsden v. State, 498 So.2d 1339 (Fla. 2d DCA 1986). When the validity of a search rests on consent the state must demonstrate that such consent was unequivocally given, and not merely deference to the apparent authority of the police. Talavera v. State, 186 So.2d 811 (Fla. 2d DCA 1966). That burden has not been met in this case.
Reversed with directions to discharge the appellant.
CAMPBELL, C.J., and RYDER and DANAHY, JJ., concur.
NOTES
[1] § 893.13(1)(f), Fla. Stat. (1987).
[2] § 893.147(1)(b), Fla. Stat. (1987).