SWANSON, J.
William Dicks, Jr., appeals his judgment of conviction and sentence for burglary of a dwelling, asserting fundamental error occurred when, during closing arguments, *858 the prosecutor misstated the law of burglary. We disagree and affirm.
On the morning of April 1, 2010, Boh-man Kirby was driving past rural land he owned in Columbia County when he noticed fresh tire tracks leading onto the property. Kirby testified he drove past the property on nearly a daily basis and had “walked” the ■ property just two or three days earlier. Located on the property was a vacant, mobile home that had been used as a residence by him and his family and, later, as rental property. On this particular morning, when he also observed the meter box had been pulled from its pole, Kirby stopped to investigate and saw that some cinder blocks used to surround a fire pit had been moved to allow a vehicle to back up to the mobile home. As he walked around the home, he also discovered that wires leading to the meter and the air conditioning unit had been cut and the back door had been pried open. Kirby looked inside a nearby utility shed and realized furniture he had been storing there was missing. The yard surrounding Kirby’s mobile home was not enclosed by a fence.
Kirby called the Columbia County Sheriffs Office. When Deputy Jonathan Rhodes arrived at around 8:45 a.m., he, too, observed the tire tracks, the cut wires, and the pry marks on the back door. In addition, he saw a hole in the skirting running around the base of the mobile home. He took photographs, collected a cigarette lighter he found on the ground, and then left. However, when he returned in the afternoon, he saw a bag of tools, a “Sawzall” and some copper wiring on the ground, none of which had been there that morning. In addition, he noticed an “egg crate” foam mattress lying on the ground — which Kirby later identified as having come from the utility shed — and discovered that the hole in the skirting appeared to have been enlarged. Using a flashlight, Deputy Rhodes looked into the hole and saw a man, later identified as Dicks, wearing work gloves and trying to hide behind the mobile home’s cement support blocks. Dicks’ brother was also under the home and wearing work gloves. Deputy Rhodes removed the men from underneath the mobile home and learned that while Dicks resided in another town, his brother lived about three miles away. When Rhodes arrested them, both men had cigarettes in their possession, but only Dicks’ brother had a lighter. Kirby, who was called back out to the property, confirmed that the wiring stacked up outside in the yard had not been there in the morning but had been cut recently and pulled out from underneath the trailer. Kirby later testified that so much wire had been removed, the mobile home was no longer capable of receiving power and all of the utilities required rewiring.
Dicks was charged by amended information with burglary of a dwelling by unlawfully entering a dwelling with the intent to commit theft, proscribed by section 810.02, Florida Statutes (2009). Section 810.011(2) defines the term “dwelling” to mean “a building or conveyance of any kind, including any attached porch ..., which has a roof over it and is designed to be occupied by people lodging therein at night, together with the curtilage thereof.” In his opening statement, defense counsel conceded that while Dicks was guilty of trespass, and even of stealing, he was not guilty of burglary.
During closing arguments, the prosecutor advised the jury that the trial court would read them instructions concerning the offense of burglary of a dwelling, but he intended “to talk” about those instructions and recited the basic elements of the offense. However, at the point of defining a “dwelling,” the prosecutor “par *859 aphrased” the statutory definition provided in section 810.011(2) by describing a dwelling as “a building with a roof designed to be occupied by persons[,] together with the yard and thé outbuildings immediately surrounding it.” Moreover, when addressing whether Dicks had “entered” the dwelling, the prosecutor described the “backyard” as part of the dwelling, and argued that by Dicks’ having “merely” entered the backyard of the mobile home, he had entered into the dwelling. The prosecutor went on to summarize his point as follows: “A person in the backyard with the intent to commit a theft, it doesn’t matter if they’re in the backyard or if they’re in the back bedroom. They are tres-passing and they are intending to steal. That is burglary.” No objection was forthcoming from the defense. Instead, in his closing argument, defense counsel strenuously expressed his disagreement with the state’s paraphrased definition of a dwelling, carefully explaining to the jury that under Florida law the yard must be “enclosed” in order to constitute a part of the dwelling. He also reminded the jury that the definition of a dwelling would be read to them by the trial court and would describe the dwelling as including only the “enclosed space of ground and outbuildings immediately surrounding it.” Nevertheless, in rebuttal, the prosecutor persisted in urging that the yard was a part of the dwelling despite its lack of fencing, stating: “[Dicks] most certainly entered that dwelling. He entered it by being in the backyard. He entered it by being underneath it.” Again, defense counsel failed to raise an objection to the prosecutor’s remarks.
At the close of the arguments, the trial court read the approved standard jury instructions concerning burglary of a dwelling. They included the following instruction regarding a dwelling:
Dwelling means a building of any kind, whether such a building is temporary or permanent, mobile or immobile, which has a roof over it and is designed to be occupied by people lodging therein at night, together with the enclosed space of ground and outbuildings immediately surrounding it. For purposes of burglary, a dwelling includes an attached porch or attached, garage.
See Fla. Std. Jury Instr. (Crim.) 13.1 (emphasis added). Additionally, at the outset of the trial, as well as just before closing arguments, the jury was instructed that what the lawyers would say was not evidence and was not to be considered as such. At the conclusion of the trial, the jury returned a verdict of guilty as charged.
There is no dispute that the prosecutor’s definition of a dwelling designed to include a trespass on unenclosed property surrounding the dwelling expressed an erroneous interpretation of the law. Although section 810.011(1) & (2) defines both a structure and a dwelling to include “the curtilage thereof,” it omits a definition of the term “curtilage.” However, the Florida Supreme Court has ruled that the term “curtilage,” as contemplated by the legislature in the burglary statute, “carries] forward the common law requirement of some form of enclosure in order for the area surrounding a residence to be considered part of the ‘curtilage’ as referred to in the burglary statute.” State v. Hamilton, 660 So.2d 1038, 1044 (Fla.1995). In doing so, the supreme court confirmed the integrity of Florida’s existing standard jury instruction on burglary. Id. at 1045-46.
Notwithstanding the prosecutor’s error, Dicks concedes his failure to object precludes appellate review of this issue unless he can demonstrate the prosecutor’s remarks constitute fundamental error. See McDonald v. State, 743 So.2d 501, 505 (Fla.1999) (holding the law is clear that a party’s failure to object to improper prose- *860 cutorial comments will preclude appellate review, unless the comments are so prejudicial as to constitute fundamental error); Chandler v. State, 702 So.2d 186, 191 (Fla.1997) (same). In that regard, to justify not imposing the contemporaneous objection rule, the error must “ ‘reach[ ] down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.’ ” Serrano v. State, 64 So.3d 93, 111 (Fla.2011) (quoting Archer v. State, 934 So.2d 1187, 1205 (Fla.2006)). See also Kilgore v. State, 688 So.2d 895, 898 (Fla.1996). Dicks argues that the prosecutor’s repeated misstatements of the law was error so fundamental he was denied a fair trial because the misstatements removed crucial factual determinations from the jury. Dicks reasons that for the jury to have found him guilty of burglary of a dwelling, it was necessary for it to find he physically entered the dwelling itself because, as the yard was not enclosed, it could not legally be included in the dwelling’s curtilage and, thus, was not a part of the dwelling. In this respect, Dicks asserts the prosecutor’s misstatements of the law enabled the jury to find him guilty without resolving the factual disputes over whether and how he could have entered the dwelling. Dicks also argues the trial court’s subsequent reading of the appropriate jury instruction did not cure the fundamental nature of the error.
Dicks’ argument might be persuasive were the facts such that he was discovered outside in the unenclosed yard. See, e.g., J.L. v. State, 57 So.3d 924, 926 (Fla. 5th DCA 2011) (reversing a burglary conviction and directing entry of judgment for trespass, where the evidence showed the defendant took items leaning against a house in a yard that was not completely enclosed). However, that is not what the evidence established here. Rather, as also argued by the prosecutor during closing, the state’s evidence placed Dicks underneath the mobile home removing the home’s copper wiring. Thus, as framed by the evidence, the parties’ closing arguments, and the appropriate instructions read by the trial court, the only question before the jury relating to the dwelling was whether Dicks’ presence underneath the mobile home amounted to his “entering or remaining in a dwelling” within the meaning of the burglary statute. The jury found that it did, and Dicks did not assert below, nor does so now, a convincing argument that such a finding is contrary to the law. See, e.g., Tindall v. State, 997 So.2d 1260, 1261 (Fla. 5th DCA 2009) (affirming the defendant’s conviction for burglary of a structure and holding that by his presence in the crawl space underneath a vacant house, where he was removing copper pipe, the defendant had “penetrated the invisible, vertical plane into the airspace of the house by crawling under the house to gain access to the pipes and thus ‘entered’ the house”); Barton v. State, 797 So.2d 1276, 1278 (Fla. 4th DCA 2001) (holding the defendant committed burglary of a conveyance when he “crossed and entered an invisible plane by reaching in over the top of the side rails of the bed” of a pickup truck and removed a bicycle).
On this record, therefore, we conclude the prosecutor’s comments did not rise to the level of fundamental error. That is because they did not “ ‘reach[ ] down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.’ ” Serrano, 64 So.3d at 111. Accordingly, the judgment of conviction and sentence for burglary of a dwelling is hereby AFFIRMED.
PADOVANO and HAWKES, JJ., concur.