EDWARDS, J.
K.W., a minor, appeals the trial court’s denial of his motion to suppress the evidence discovered in his book bag during a warrantless search conducted by Deputy Sheriff Garner. Under those circumstances, the burden is on the State to prove that Appellant gave the deputy unequivocal, voluntary consent to search his book bag.[1] Appellant never gave any verbal response to the deputy’s several requests for permission to search his bag. The State contends that Appellant gave nonverbal consent by stepping back from the bag, looking around and away from the deputies, and giving what was described as “kind of a shrug.” Whether consent to a search is voluntary is a mixed question of law and fact to be determined by the trial court from the totality of the circumstances. Although it denied Appellant’s motion to suppress, the trial court never ruled directly on whether Appellant gave consent for the search of his book bag. Instead, the trial court erroneously concluded that Appellant had abandoned the bag when he stepped back from it and further erred by finding that the search of Appellant’s book bag was justified due to concern for officer safety. We reverse and remand with instructions to the trial court for further proceedings, including entry of an order determining whether Appellant gave unequivocal, voluntary consent for the search.
On the afternoon of May 31, 2014, Deputy Garner, and his field training officer, Deputy Meadows, responded to an indecent exposure complaint at an apartment complex. Upon arrival, Garner saw the complex’s security guard in a golf cart following Appellant, who was walking in Garner’s direction. Garner approached Appellant and asked him to place his book bag on the ground for officer safety. Appellant complied with the request and answered Garner's inquiries about his identity and purpose for being at the apartment complex. The deputies determined that the exposure complaint was unwarranted. However, at the request of the property manager, Deputy Garner issued a trespass *1127 warning to Appellant. Garner then told Appellant that he must leave the property.
Next, Garner asked Appellant for permission to search his bag. Appellant stepped back and looked around over his shoulders, but did not say anything to Garner. After Appellant failed to respond to Gamer’s second and third requests for permission to search the backpack, Garner picked up the backpack and said “I’m going to search your bag now, is that okay with you?” Appellant did not respond verbally, and, according to Garner, made no gestures either. Deputy Meadows testified that Appellant “kind of shrugged his shoulders like to indicate that he didn’t care.” As Garner opened the bag, he stated that he appreciated Appellant’s consent to search the bag. Appellant remained silent, did not attempt to take his bag away from Garner, and did not make any other gestures during the search. Garner found a baggie of marijuana inside Appellant’s bag, along with two cigars, one of which was altered and stuffed with marijuana. Garner then handcuffed Appellant and field tested the marijuana.
At the time of the incident, Appellant was on probation for a third-degree felony and first-degree petit theft. Following the arrest, the State filed violation of probation charges and also charged Appellant with possession of twenty grams or less of cannabis and possession of drug paraphernalia.
Appellant moved to suppress the physical evidence seized during the warrantless search of his backpack. At the suppression hearing, Gamer testified that, from their initial contact until the deputy issued and gave Appellant the trespass warning, Appellant was not free to leave. Gamer additionally testified that after issuing the warning and prior to the search, he informed Appellant that he was free to leave. Both deputies confirmed that Appellant did not give unequivocal verbal consent for a search of his bag, but both testified that they interpreted Appellants actions or inaction as implied permission to proceed with the' search. Appellant testified that he never gave the deputies consent to search his bag. The trial court denied the motion to suppress and Appellant pled no contest while specifically reserving the right to- pursue this appeal.
The trial court denied the motion to suppress based upon two theories not argued by either party. First, the trial court found that by placing his backpack on the ground, as requested by the deputy sheriff, and then stepping back from the bag during the search, Appellant abandoned his property, in the' same fashion that somebody may throw out a baggie of contraband from a car. Thus, reasoned the trial court, the deputies did not need consent to search the “abandoned” bag. Second, the trial court found that the search of the bag was undertaken for officer safety even though neither deputy claimed that rationale. However, the trial court never ruled directly on whether Appellant consented to the search of his bag.
“In reviewing the trial court’s ruling on the motion to suppress, we are governed by the standard that mixed questions of law and fact that ultimately determine constitutional rights should be reviewed ... using a two-step approach, deferring to the trial court on questions of historical fact but conducting a de novo review of the constitutional issue.” Luna-Martinez v. State, 984 So.2d 592, 597 (Fla. 2d DCA 2008) (alteration in original) (citation omitted).
Consent
Warrantless searches are per se, unreasonable unless the search falls within an exception to the warrant requirement, *1128 See Jorgenson v. State, 714 So.2d 423, 426 (Fla.1998). The State has the burden to show that the defendant freely and voluntarily gave the necessary consent. See Ruiz v. State, 60 So.3d 1229, 1281 (Fla. 4th DCA 2011). This burden is not satisfied by a showing of mere submission to a claim of lawful authority. Id. An encounter between a police officer and a citizen does not automatically constitute a seizure in the constitutional context. G.M. v. State, 19 So.3d 973, 977-78 (Fla.2009). “A consensual encounter involves minimal police contact in which the individual may voluntarily comply with or ignore the officer’s request.” State v. Bell, 122 So.3d 422, 425 (Fla. 2d DCA 2013) (citing G.M., 19 So.3d at 977). “If there is any doubt as to whether consent was given, that doubt must be resolved in favor of the person who was searched.” V.H. v. State, 903 So.2d 321, 322 (Fla. 2d DCA 2005) (citing Robinson v. State, 388 So.2d 286, 291 (Fla. 1st DCA 1980)). To waive search and seizure rights, the evidence must demonstrate that the defendant voluntarily permitted or expressly invited and agreed to the search. Bailey v. State, 319 So.2d 22, 27 (Fla.1975).
“Whether consent is voluntary is a question of fact to be determined from the totality of the circumstances.” Ruiz, 50 So.3d at 1231 (citing McDonnell v. State, 981 So.2d 585, 588 (Fla. 1st DCA 2008)). “Consent to search may be in the form of conduct, gestures, or words.” State v. Gamez, 34 So.3d 245, 247 (Fla. 2d DCA 2010) (citations omitted); see Watson v. State, 979 So.2d 1148, 1151-52 (Fla. 1st DCA 2008) (finding voluntary consent to personal search from defendant’s oral replies and his body language). “To decide whether a consent is voluntary, courts consider a number of factors, including the time and place of the encounter, the number of police officers present, the officers’ words and actions, and the age, education or mental condition of the person detained.” Ruiz, 50 So.3d at 1231 (citing Hardin v. State, 18 So.3d 1246, 1248 (Fla. 2d DCA 2009); State v. Evans, 9 So.3d 767, 769 (Fla. 2d DCA 2009)).
Another consent consideration is whether the search is incidental to a consensual encounter or a seizure occurred, which again requires courts to look at the totality of the circumstances to decide whether a reasonable person would feel free to leave. G.M., 19 So.3d at 978. “An officer may ask for consent to search during a consensual citizen encounter, and the officer need not have a reasonable suspicion of criminal activity before seeking consent to search.” Bell, 122 So.3d at 426 (quoting [State v.] Witherspoon, 924 So.2d 868, 871 (Fla. 2d DCA 2006)). “When the validity of a search rests on consent the state must demonstrate that such consent was unequivocally given, and not merely deference to the apparent authority of the police.” Thompson v. State, 555 So.2d 970, 971 (Fla. 2d DCA 1990) (citing Talavera v. State, 186 So.2d 811, 814 (Fla. 2d DCA 1966)).
Appellant had no obligation to protest or interfere with the search. See Wynn v. State, 14 So.3d 1094, 1096 (Fla.2009) (finding no proof of unequivocal consent where defendant did not reply to deputy who asked if he could search defendant). During the subject encounter, Deputy Garner had indeed exercised some degree of authority over Appellant by questioning him, issuing a trespass warning, and telling Appellant that he must leave the property. Further, Garner testified that until he was through issuing the trespass warning, Appellant was not free to leave.
Here, the trial court never ruled directly on whether, under the totality of the circumstances, Appellant gave unequivocal, voluntary consent for the deputy to search *1129 his bag. Because that is a mixed question of law and fact to be resolved by the trial court, we must remand for further proceedings consistent with this opinion, including a ruling on the issue of consent. For guidance on remand, we will address the rulings that the trial court did make regarding the search of Appellant’s book bag.
Officer Safety
There is no disagreement with the trial court’s statement that “when you’re dealing with officer safety, it is totally and completely reasonable to ask him [Appellant] to drop the backpack.” Here, however, there was no direct evidence before the trial court from which it could infer that officer safety was the reason for the search. This search came after Garner determined that the reported crime, indecent exposure, had not been committed. There was no testimony that Appellant did anything to raise officer safety concerns during his encounter with the deputies. Concerns about officer safety cannot justify a search after such concerns have been dispelled. Thompson, 555 So.2d at 971. Thus, the trial court erred when it relied upon officer safety in denying the motion to suppress.
Abandonment
The trial court based the denial on another concept which neither side had asserted during the hearing — abandonment. It found that Appellant abandoned his book bag by stepping away from it after he was ordered by Officer Garner to place it on the ground. The. trial court reasoned that stepping back from the bag was analogous to tossing a baggie filled with contraband out the window of a car.
“It is not a search, however, for the police to retrieve property which a defendant has voluntarily abandoned in an area where he has no reasonable expectation of privacy.... ” State v. Oliver, 368 So.2d 1331, 1335 (Fla. 3d DCA 1979) (citing Freyre v. State, 362 So.2d 989, 991 (Fla. 3d DCA 1978)). In such cases, “the person has made a voluntary decision to avoid a police search by discarding evidence in an area where he has no Fourth Amendment protection.” Id. When a defendant voluntarily abandons property, the defendant lacks standing to challenge its search and seizure. Mori v. State, 662 So.2d 431, 431 (Fla. 3d DCA 1995). Courts consider the defendant’s intent, inferred from words and actions and other circumstances when determining if property has been abandoned for search and seizure purposes. Kelly v. State, 536 So.2d 1113, 1114 (Fla. 1st DCA 1998).
In Harrison v. State, 627 So.2d 583, 584 (Fla. 5th DCA 1993), this court held that an initial consensual encounter with police evolved into a seizure based on the defendant’s submission to an improper showing of police authority. In Harrison, a deputy approached the defendant and identified himself as a police officer. 627 So.2d at 584. The deputy instructed the defendant to remove his hand from his pocket. Id. As the defendant complied, a substance resembling cocaine fell .from his person. Id. This court reasoned that the abandonment of the cocaine was involuntary because it was the product of an illegal stop and, thus, must be suppressed. Id.
The State has the burden to establish abandonment by clear, unequivocal, and decisive evidence. Kelly, 536 So.2d at 1114-15 (finding no evidence that clearly indicated that defendant retained no justifiable expectation of privacy in a backpack left on a bicycle parked in a parking lot for five to ten minutes). The reasonable expectation of privacy carries significant weight in the consideration of *1130 abandonment for search and seizure purposes.
Whether Appellant submitted to police authority by remaining where he was is unclear, given Garner’s testimony that Appellant was initially hot free to leave, and was finally told to leave only after Garner gave him the trespass warning. There was no testimony as to how much time elapsed between Garner telling Appellant that he must leave and Garner asking if he could search the bag.'
Regardless of whether Appellant was illegally seized or submitted to the deputies’ apparent authority, there was no competent, substantial evidence that Appellant abandoned his book bag. Unlike the trial court’s analogy of throwing a baggie out a window, Appellant placed his bag on the ground at the specific request of the deputy. Although the trial court found great significance in Appellant’s action of stepping away from his backpack, it is at most an ambiguous, nonverbal action that is more consistent with recognizing the deputy’s exercise of authority, than with ah attempted abandonment. There was no evidence that Appellant did or said anything that indicated he planned to leave without his bag once the encounter with the deputies concluded. Because the State did not prove that Appellant abandoned his backpack, the trial court erred in denying the motion to suppress on that basis.
Conclusion
For the reasons stated above, we reverse- and remand to the trial court with instructions for further proceedings consistent with this opinion, including specifically entry of an order on the issue of whether Appellant gave unequivocal, voluntary consent to the search of his book bag by Deputy Garner.
REVERSED AND REMANDED WITH INSTRUCTIONS.
PALMER, J., concurs.
BERGER, J., concurs in result only.

. The witnesses and trial court used "book bag” and "backpack” interchangeably when discussing the item Gamer searched.