NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

FRED DAVIS, III,                              )
                                             )
              Appellant,                      )
                                             )
v.                                            )        Case No. 2D16-887
                                             )
STATE OF FLORIDA,                             )
                                             )
              Appellee.                       )
                                             )
_____)

Opinion filed June 28, 2017.

Appeal from the Circuit Court for Pinellas
County; Frank Quesada, Judge.

Howard L. Dimmig, II, Public Defender, and
Elisabeth G. Whitmire, Assistant Public
Defender, Bartow, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Helene S. Parnes,
Assistant Attorney General, Tampa, for
Appellee.

VILLANTI, Chief Judge.

Fred Davis, III, appeals his conviction and sentence for one count of

possession of cocaine, arguing that the trial court erred by denying his dispositive

motion to suppress the cocaine seized from a pill bottle stashed in concrete latticework

attached to the foundation of the rooming house where Davis was staying.  We agree

with the trial court's determination that Davis had standing to challenge the seizure of the pill bottle and its contents. However, because we determine that Davis had a constitutionally protected interest in the latticework where he stashed the pill bottle, we conclude that he did not abandon it. And because the officer had no legal basis for seizing the pill bottle other than its alleged abandonment, we must reverse Davis's conviction and sentence and remand for discharge.

The facts of this case are essentially undisputed. Davis was staying with his brother in a rooming house in St. Petersburg. Davis had a key to the rooming house and kept belongings there, although he sometimes also stayed with his girlfriend who lived elsewhere. Davis paid his brother a portion of the rent for the room in the rooming house.

On the night of April 7, 2015, Officer Acri was in the area of the rooming house on a wholly unrelated call about a suspicious vehicle when he saw Davis and his brother standing on the back porch of the rooming house. Acri testified that he heard Davis's brother say "cops" before he turned and went inside the rooming house. Rather than joining his brother inside, Davis walked down the porch steps and crossed the grass lawn that surrounded the house. He then placed a small bottle in the concrete latticework that was attached to the foundation of the house and that covered the crawl space under it; picked up his bicycle, which had been leaning against the house; and began to walk away while pushing the bicycle.

Based on a hunch that the pill bottle might contain an illegal substance, Acri stopped Davis and began to question him about the suspicious vehicle that had been reported in the area. After Davis said he knew nothing about that, Acri asked

Davis what was in the pill bottle that he had placed in the latticework. Davis denied knowing anything about the pill bottle. Acri then handcuffed Davis and put him in the back of his cruiser.

With Davis secured, Acri walked through the yard to the side of the rooming house, reached into the latticework under the house, and pulled out a pill bottle. He opened the pill bottle and discovered cocaine inside. It was undisputed that Acri did not attempt to obtain consent from Davis or any other resident of the rooming house before he crossed the lawn and reached into the latticework under the house. It was also undisputed that Acri had only an inchoate hunch as to what was in the pill bottle before he retrieved it and opened it. Upon Acri discovering the contents of the pill bottle, he arrested Davis for possession of the cocaine in the pill bottle. The State later formally charged Davis with trafficking in cocaine based on the amount of cocaine found in the pill bottle.

Davis filed a motion to suppress the pill bottle and its contents, arguing that Acri had no right to seize the pill bottle from under the house without a warrant or proof that an exception to the warrant requirement applied. The State argued that Davis had no standing to challenge the search because he had abandoned the pill bottle and because Acri had an obligation to "check out" the bottle as a matter of public policy so that children would not find it and so that it could be returned to its rightful owner. Despite the State's argument, the trial court correctly found that Davis in fact had standing to challenge the seizure, but the court then concluded that Davis had abandoned the pill bottle by putting it in an area that was not constitutionally protected.

Therefore, the trial court denied the motion to suppress on this alternate basis. Davis now appeals.

As a general proposition, "[a] defendant who voluntarily abandons property or disclaims ownership lacks standing to challenge its search and seizure." State v. Fosmire, 135 So. 3d 1153, 1156 (Fla. 1st DCA 2014); see also K.W. v. State, 183 So. 3d 1123, 1129 (Fla. 5th DCA 2015); Mori v. State, 662 So. 2d 431, 431 (Fla. 3d DCA 1995); State v. Daniels, 576 So. 2d 819, 823 (Fla. 4th DCA 1991). For example, in Fosmire, when the defendant told the police that two of the cell phones seized during a consensual search were not hers, she had no standing to challenge a subsequent search of those cell phones. 135 So. 3d at 1156. Similarly, in Daniels, when the defendant affirmatively told the police that a particular suitcase was not hers, she had no standing to challenge the warrantless search of that suitcase. 576 So. 2d at 823; see also United States v. Roman, 849 F.2d 920, 922 (5th Cir. 1988) (holding that one who disclaims ownership of a suitcase has no legitimate expectation of privacy in that suitcase or its contents and therefore cannot challenge the search). Essentially, by repudiating ownership, the defendant loses standing.

However, the theory of abandonment applies only when "a defendant has voluntarily abandoned [property] in an area where he has no reasonable expectation of privacy . . . ." State v. Oliver, 368 So. 2d 1331, 1335 (Fla. 3d DCA 1979) (emphasis added) (citing Freyre v. State, 362 So. 2d 989, 991 (Fla. 3d DCA 1978)). This is so because in such cases "the person has made a voluntary decision to avoid a police search by discarding evidence in an area where he has no Fourth Amendment protection." Id. Thus, the question of whether Davis "abandoned" his property and so

- 4 -

lacked standing turns on whether the latticework under the rooming house where Davis lived was subject to Fourth Amendment protection.[1]

Further, the same Fourth Amendment considerations apply to the State's argument on appeal that the seizure of the pill bottle was lawful under the plain view doctrine. The supreme court has explained the variations of the plain view doctrine in detail:

> The term "plain view" has been misunderstood and misapplied because courts have made it applicable to three distinct factual situations. This has resulted in confusion of the elements of the "plain view doctrine." To eliminate this confusion, we believe it appropriate to distinguish the true "plain view doctrine" as established in Coolidge v. New Hampshire, 403 U.S. 443, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971), from other situations where officers observe contraband.
>
> The first factual situation we identify as a "prior valid intrusion." In this situation, an officer is legally inside, by warrant or warrant exception, a constitutionally protected area and inadvertently observes contraband also in the protected area. It is this situation for which the United States Supreme Court created the "plain view doctrine" in Coolidge and held that an officer could constitutionally seize the contraband in "plain view" from within this protected area. We emphasize that it is critical under this doctrine for the officer to be already within the constitutionally protected area when he inadvertently discovers the contraband.
>
> We identify the second factual situation as a "non-intrusion." This situation occurs when both the officer and the contraband are in a non-constitutionally protected area. Because no protected area is involved, the resulting seizure has no fourth amendment ramifications, and, while the contraband could be defined as in "plain view," it should not be so labeled to prevent any confusion with the Coolidge "plain view doctrine."

---

[1]Because the nature and placement of this latticework were critical to this court's consideration of this issue, we include a photograph of the rooming house as an appendix to this opinion. This photograph was introduced into evidence at the hearing on Davis's motion.

> The third situation concerns a "pre-intrusion." Here, the officer is located outside of a constitutionally protected area and is looking inside that area. If the officer observes contraband in this situation, it only furnishes him probable cause to seize the item. He must either obtain a warrant or have some exception to the warrant requirement before he may enter the protected area and seize the contraband. As with the non-intrusion situation, the term "plain view" should not be employed here to prevent confusion. For clarity, we label an observation in the latter two non-Coolidge situations as a legally permissive "open view."

State v. Rickard, 420 So. 2d 303, 304-05 (Fla. 1982) (quoting Ensor v. State, 403 So. 2d 349, 352 (Fla. 1981)).

Here, the trial court found that Davis had standing, thus implicitly finding that he did not abandon the pill bottle in an area outside Fourth Amendment protection. It also concluded that the facts fell not within an abandonment theory, but instead within the second category of "non-intrusion," apparently finding that the latticework protecting the crawl space under the rooming house where Davis lived was not a constitutionally protected area and hence that Acri's seizure of the pill bottle from that area did not have any Fourth Amendment ramifications. But these two findings are irreconcilable from a Fourth Amendment standpoint, and resolution of this case requires us to address the question of whether the latticework attached to the foundation of the rooming house was, or was not, an area protected by the Fourth Amendment.

Initially, it appears that Florida law, as explained in State v. Titus, 707 So. 2d 706 (Fla. 1998), would hold that the foundation of the rooming house was an area in which Davis would have a reasonable expectation of privacy. In Titus, the police received a tip that a resident of a rooming house was smoking narcotics inside. Id. at 707. Without obtaining either consent or a warrant, the police entered the property

- 6 -

through a side gate and entered the house through a back door that was open and possibly doorless. Id. The police walked through a hall to the common kitchen, where several people were gathered—some residents, some guests, and some others. Id. The police found Titus placing a crack pipe in his pocket, and he was arrested and charged with possession of cocaine and paraphernalia. Id.

Titus moved to suppress the cocaine, arguing that he had a reasonable expectation of privacy in the house, even though it was a rooming house where he shared certain living spaces with others. Id. The trial court rejected this argument, and Titus pleaded no contest while reserving his right to appeal. And on appeal, the Fourth District reversed, holding that the officers' entry into the rooming house was improper absent either a search warrant or consent from an occupant. Id. The State then sought review.

In affirming the Fourth District's decision, the supreme court agreed with Titus that a rooming house was a dwelling and that the fact that residents lacked total privacy and had to traverse hallways to reach their bedrooms from the common areas did not defeat the "essential nature" of the building as a private dwelling. Id. at 707-08. As the court explained:

> The Fourth Amendment establishes "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. . . ." U.S. Const. amend. IV[ ]. Indeed, "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed," United States v. United States District Court, 407 U.S. 297, 313, 92 S. Ct. 2125, 2134-35, 32 L. Ed. 2d 752 (1972), and "[a]t the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." Silverman v. United States, 365 U.S. 505, 511, 81 S. Ct. 679, 682-83, 5 L. Ed. 2d 734 (1961).

It is this concept of "home," so sacrosanct under Fourth Amendment law, that guides our decision today. The mere fact that certain rooms traditionally associated with a home are shared by rooming house residents does not render the structure any less a home to those residents. See, e.g., McDonald v. United States, 335 U.S. 451, 453-56, 69 S. Ct. 191, 192-94, 93 L. Ed. 153 (1948) (applying Fourth Amendment protections of the home to rooming house in reversing denial of suppression motion where warrantless police climbed through landlady's window and proceeded to hallway where they observed illegal activity in defendant's room by standing on chair and looking through transom); id. at 458, 69 S. Ct. at 194 ("[E]ach tenant of a building, while he has no right to exclude from the common hallways those who enter lawfully, does have a personal and constitutionally protected interest in the integrity and security of the entire building against unlawful breaking and entry.") (Jackson, J., concurring); Brown v. United States, 83 F.2d 383, 386 (3d. Cir. 1936) ("[Certain of the appellants] were roomers in the house. It was their home and so far as the unlawful search affected them, it violated their constitutional rights."); United States v. Booth, 455 A.2d 1351, 1353-54 (D.C. 1983) (rejecting government's argument that because appellees lived in a rooming house, as opposed to a private home, they lacked a legitimate expectation of privacy in the front hall where police made warrantless entry); People v. Garriga, 189 A.D.2d 236, 596 N.Y.S.2d 25, 28 ("[W]e believe that the officers here, by entering the internal hallways of the defendant's rooming house to find him engaged in a criminal transaction, entered the defendant's home in a constitutional sense."), leave to appeal denied, 82 N.Y.2d 718, 602 N.Y.S.2d 815, 622 N.E.2d 316 (1993).

Id. at 708 (emphasis added) (footnote omitted). However, the court cautioned that "this would not be the case if the rooming house in question was obviously open to the general public." Id. at 709. But the fact that the premises was a rooming house does not, ipso facto, establish that the premises is open to the general public. Id. Finally, the court noted another justification for finding that residents of rooming houses were entitled to Fourth Amendment protections:

> [T]here is too, in our view, importance on another level in finding the common internal hallway area of a rooming house a private, as opposed to a public, place, which arises from our obligation as judges to construe and vindicate constitutional safeguards in a class-neutral manner. Clearly, it is economic necessity that requires those who live in such humble circumstances to dwell there. That they cannot afford to have their own kitchens and bathrooms, and hallway access thereto, does not render such areas "public" with respect to the constitutional prerequisites for permissible entry by the police. . . . We should vigilantly guard against permitting . . . inroads upon the reasonable expectations of privacy of the lesser situated of our citizens who are forced by economic circumstances to reside in rooming houses.

Id. at 710 (quoting People v. Garriga, 596 N.Y.S.2d 25, 29 (N.Y. App. Div. 1993)).

From Titus, the general principle is clear that the residents of a rooming house are entitled to the same Fourth Amendment protections as residents of single-family houses are, as long as the rooming house itself is not open to the public. Cf. City of Evanston v. Hopkins, 71 N.E.2d 209 (Ill. App. Ct. 1947) (upholding as valid police entry into a rooming house when there was a "Public Telephone" sign at the entrance and the door was open). And hence, because the rooming house here was at least arguably Davis's residence and there was no evidence that it was open to the public, Davis had a Fourth Amendment right to be free of warrantless searches of that residence, and the trial court's conclusion that the pill bottle was not in a constitutionally protected area was erroneous.

Further, any argument that the pill bottle was not in a constitutionally protected area because it was outside the house is not supported by the facts here. While there is some dispute as to whether the curtilage of a rooming house is afforded the same Fourth Amendment protection as a single-family dwelling, see Titus, 707 So.

2d at 707 n.1 (stating that the opinion is limited to the interior areas of rooming house and does not address the exterior areas or curtilage), here the pill bottle was not found in the curtilage. Instead, the record shows that Davis placed the pill bottle in concrete latticework that was attached to the foundation of the house and protected the crawlspace from intruders. This latticework and the crawlspace behind it were part of the structure. See Tindall v. State, 997 So. 2d 1260, 1261 (Fla. 5th DCA 2009) (holding that entry into the crawlspace constituted entry into a structure because the defendant "penetrated the invisible, vertical plane into the airspace of the house by crawling under the house to gain access"); see also Dicks v. State, 75 So. 3d 857, 860 (Fla. 1st DCA 2011) (holding that defendant's entry into the crawlspace under a mobile home was sufficient to constitute his "entering" the dwelling for purposes of a burglary charge); cf. Peterson v. Jones, No. 3:14CV104/RV/CJK, 2016 WL 873235 at *8 (N.D. Fla. 2016) (holding that burglary conviction of defendant who crawled onto the roof of a building and stole air conditioning coils from units on the roof was supported by the evidence because entry onto the roof penetrated the vertical plane of the structure). Hence, Acri did more than enter the curtilage of the rooming house; he entered the house itself by penetrating the "invisible vertical plane into the airspace of the house." This intrusion into a constitutionally protected space removes this case from the "non-intrusion" line of cases relied upon by the trial court and renders the trial court's ruling that the area was not constitutionally protected incorrect.

Having determined that the latticework and the crawl space behind it are part of the constitutionally protected space of the rooming house, we conclude that the only way Acri could validly seize the pill bottle was if it could somehow be considered to

- 10 -

have been in "open view." As discussed above, the "open view" doctrine applies when an officer is located outside of a constitutionally protected area looking in. If the officer sees contraband in that situation, it furnishes him probable cause to seize the item, but he must either obtain a warrant or have some exception to the warrant requirement before he may enter the protected area and seize the contraband. Rickard, 420 So. 2d at 305. The problem here is that Acri did not see "contraband" in the latticework; he saw only an opaque pill bottle. His hunch that it might contain contraband was just that—a hunch.

But more importantly, Acri had neither a warrant nor facts to support an exception to the warrant requirement when he entered the property. The five established exceptions to the warrant requirement are: "(1) consent, (2) incident to a lawful arrest, (3) with probable cause to search but with exigent circumstances, (4) in hot pursuit, and (5) stop and frisk." Gnann v. State, 662 So. 2d 406, 408 (Fla. 2d DCA 1995). Here, there is no dispute that Davis did not consent to the search, and no facts support either hot pursuit or stop and frisk. The trial court found that Davis's arrest was not lawful, but even it if was, that would not have supported a search of the crawl space under the house. And while the State argued some form of exigent circumstances in trying to keep the pill bottle out of the hands of children, the evidence did not show that there were children in the area, that the police did not have the ability to control the scene, or that the police did not have time to procure a warrant. Therefore, with no warrant or warrant exception, the State cannot show that Acri's seizure of the pill bottle was legal under the "open view" doctrine.

We recognize that not all areas on the exterior of a residence are subject to Fourth Amendment protection. For example, in State v. Detlefson, 335 So. 2d 371, 372 (Fla. 1st DCA 1976), the court held that a defendant had no reasonable expectation of privacy on the front porch of a house because deliverymen and visitors would use the porch to reach the front door. Perhaps more significantly, in State v. Duhart, 810 So. 2d 972, 973-74 (Fla. 4th DCA 2002), the court held that a defendant had no reasonable expectation of privacy in an open carport that was attached to the side of the house.

However, this case does not involve the front porch of a residence, where one might expect visitors and delivery persons to routinely be. Further, unlike the carport in Duhart, the latticework in this case was not an open area in which passersby could readily observe its contents. The record here shows that Davis took affirmative steps to hide the pill bottle in an area not readily observable by others and where one would not expect passersby or delivery persons to be. Hence, this case is not controlled by cases addressing items found on a front porch or in an open carport.

In sum, we hold that the area in and behind the latticework covering the foundation was a constitutionally protected area of the rooming house in this case. Therefore, while we agree with the trial court that Davis had standing to challenge the seizure of his property from that location, we conclude that the trial court erred in denying the motion to suppress because the State failed to prove that Acri had a legal basis upon which to enter the property and seize the pill bottle from that location. And given the dispositive nature of Davis's motion, Davis must be discharged on remand. See, e.g., Jacoby v. State, 851 So. 2d 913, 914-15 (Fla. 2d DCA 2003) (ordering

discharge of defendant when denial of dispositive motion to suppress was reversed on appeal).

Reversed and remanded for discharge.

LaROSE and SLEET, JJ., Concur.



St Petersburg, Florida

APPENDIX

- 14 -