# SIXTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 6D23-1787
Lower Tribunal No. 20-CF-1350

_____

THOMAS HARGROVE,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

_____

Appeal from the Circuit Court for Osceola County.
Mikaela Nix-Walker, Judge.

April 19, 2024

MIZE, J.

Appellant, Thomas Hargrove ("Hargrove"), appeals his convictions and sentences for: (1) possession of a firearm by a convicted felon; (2) fleeing or attempting to elude a law enforcement officer; (3) armed trespass on property other than a structure or conveyance; and (4) driving with a suspended license. Hargrove asserts that the trial court erred when it: (1) denied Hargrove's motion to suppress the evidence obtained from a warrantless search of his bag; and (2) denied Hargrove's motion for judgment of acquittal on the charge of armed trespass. We

affirm the trial court's ruling on the motion for judgment of acquittal without discussion. We write to address the trial court's ruling on the motion to suppress, which we also affirm.

## Background and Procedural History

On the day of Hargrove's arrest, at around 4:45 a.m., the Osceola County Sheriff's Office (the "Sheriff's Office") investigated a possible burglary. Sheriff's Office deputies set up a perimeter in the relevant area to look for burglary suspects and to contain the suspects to a particular area. The suspects were believed to be a man and two women. Deputy Benjamin Garrison ("Garrison") was stationed at one of the perimeter checkpoints and stopped every car that came through to see if the occupants matched the description of the suspected burglars. Hargrove, who was driving a black Kia Forte, approached Garrison's checkpoint, and Garrison stopped him.[1] Garrison asked Hargrove for his identification. As Hargrove reached toward his pocket, Garrison stepped back to look in the rear passenger area of the car because he saw a female passenger. When Garrison stepped back, Hargrove rapidly accelerated the car and sped away from the checkpoint without permission.

After Hargrove left Garrison's checkpoint, Hargrove's movements were recorded by a Sheriff's Office aviation unit helicopter camera. Hargrove fled from

---

[1] Hargrove filed two other motions to suppress asserting that this stop was illegal, both of which the trial court denied. Hargrove did not appeal those rulings.

2

the checkpoint into a residential neighborhood, stopped and exited his vehicle, and then proceeded on foot onto a residential property where he jumped over a fence and entered the backseat of an automobile that was in the backyard of the property. As shown on the video from the helicopter camera, Hargrove had a strapped bag with him when he entered the vehicle.

Deputy Javier Cruz ("Cruz") and another deputy (who was deceased by the time of trial) were assisting in the investigation and were directed to the backyard of the residence by the Sheriff's Office aviation unit, where they found two vehicles. The deputies found Hargrove lying in the back seat of one of the two vehicles. Cruz ordered Hargrove out of the vehicle and arrested him. When Hargrove exited the vehicle, he did not have the bag that the aviation unit witnessed him take into the vehicle.

After Hargrove's arrest, Deputy Jacob Beekman ("Beekman") was directed to the residence where Hargrove was arrested. Beekman spoke to the homeowner, Johanna Ortiz Melendez ("Ortiz"). Beekman confirmed that Ortiz owned the vehicle in which Hargrove was found and that Ortiz did not give Hargrove permission to be on her property. Beekman told Ortiz that there may have been property left in the vehicle.[2] After Beekman spoke with Ortiz, Beekman searched the backseat of the

---

[2] Ortiz gave Beekman consent to search the vehicle. The State did not argue below or on appeal that Ortiz's consent for Beekman to search the vehicle constituted valid third-party consent that allowed Beekman to search the bag.

vehicle and discovered a black strap bag stuffed into the seat cover on the back of the passenger seat. Beekman asked Ortiz if the bag belonged to her, and she confirmed that it did not. Beekman searched the inside of the bag and found, among other things, the handgun that Hargrove was later convicted of possessing. The Sheriff's Office did not obtain a warrant to search Hargrove's bag before Beekman searched it.

Ortiz testified below that she did not know Hargrove and did not give him permission to be in her backyard or to enter her vehicle. Ortiz testified that the bag and the handgun that were found in her vehicle did not belong to her, she had never seen them before, and she did not know why they would have been in her vehicle on the day of Hargrove's arrest. Ortiz had not given permission to anyone to store either the bag or the handgun in her vehicle.

The State filed an Information charging Hargrove with the crimes of which he was convicted in the trial court.[3] Prior to the trial, Hargrove filed the motion to suppress at issue in this appeal. In the motion, Hargrove argued that the warrantless search of his bag was not a valid search incident to arrest and that, therefore, the search was illegal. In response, the State argued that the search of the bag was proper because Hargrove abandoned the bag when he hid it in Ortiz's vehicle and, therefore,

---

[3] The Information also charged Hargrove with possession of heroin and possession of drug paraphernalia. Those charges were nolle prossed before the trial.

4

Hargrove had no reasonable expectation of privacy in the bag under the Fourth Amendment. The trial court ruled that Hargrove abandoned his interest in the bag for purposes of the Fourth Amendment and, on that basis, denied the motion to suppress. The case proceeded to trial and Hargrove was found guilty of all charges. In this appeal, Hargrove argues that the trial court erred by finding that Hargrove abandoned his bag such that he no longer maintained a reasonable expectation of privacy in the bag for purposes of the Fourth Amendment.

**Analysis**

## I. Standard of Review

"A trial court's ruling on a motion to suppress comes to the appellate court clothed with a presumption of correctness and the court must interpret the evidence and reasonable inferences and deductions derived therefrom in a manner most favorable to sustaining the trial court's ruling." *Doorbal v. State*, 837 So. 2d 940, 952 (Fla. 2003) (quoting *Terry v. State*, 668 So. 2d 954, 958 (Fla. 1996)). "Accordingly, the appellate courts defer to the trial court's factual findings so long as the findings are supported by competent, substantial evidence." *Rodriguez v. State*, 187 So. 3d 841, 845 (Fla. 2015) (quoting *State v. Hankerson*, 65 So. 3d 502, 506 (Fla. 2011) (internal quotations omitted)). However, we review "de novo the mixed questions of law and fact that arise in the application of the historical facts to the protections of the Fourth Amendment." *Wyche v. State*, 987 So. 2d 23, 25 (Fla.

5

2008); *see also Connor v. State*, 803 So. 2d 598, 608 (Fla. 2001). In this case, the pertinent facts are undisputed. Thus, our review is purely de novo. *See Everett v. State*, 893 So. 2d 1278, 1283 (Fla. 2004).

**II. Standing Under the Fourth Amendment to the United States Constitution**[4]

"To invoke the Fourth Amendment, a criminal defendant must establish standing by demonstrating a legitimate expectation of privacy in the area searched or the item seized." *Strachan v. State*, 199 So. 3d 1022, 1024 (Fla. 4th DCA 2016) (quoting *Peraza v. State*, 69 So. 3d 338, 340 (Fla. 4th DCA 2011) (internal quotations omitted)); *see also Rakas v. Illinois*, 439 U.S. 128, 143 (1978) ("[C]apacity to claim the protection of the Fourth Amendment depends not upon a

---

[4] Below and on appeal, Hargrove also invoked Article 1, Section 12 of the Florida Constitution. The Fourth Amendment to the United States Constitution and Article 1, Section 12 of the Florida Constitution both guarantee citizens the right to be free from unreasonable searches and seizures. Article 1, Section 12 contains a conformity clause mandating that the right guaranteed therein must be construed in conformity with the Fourth Amendment to the United States Constitution, as interpreted by the United States Supreme Court. *See Smallwood v. State*, 113 So. 3d 724, 730 (Fla. 2013). Therefore, the analysis of Hargrove's argument concerning Article 1, Section 12 is identical to the analysis under the Fourth Amendment. "In considering the relevant case law, we are required to adhere to the interpretations of the United States Supreme Court, but are not bound to follow the decisions of other federal courts." *Harris v. State*, 238 So. 3d 396, 399 (Fla. 3d DCA 2018) (quoting *State v. Markus*, 211 So. 3d 894, 902 (Fla. 2017) (internal quotations omitted)). "If no U.S. Supreme Court precedent is factually or legally on point, we may review Florida state precedent, as well as other state and federal decisions for guidance on a search and seizure issue." *Id.* (quoting *Markus*, 211 So. 3d at 902 (internal quotations omitted)).

property right in the invaded place but upon whether the person who claims the protection of the Fourth Amendment has a legitimate expectation of privacy in the invaded place." (citing *Katz v. United States*, 389 U.S. 347, 353 (1967))).

Under the Fourth Amendment, "[a] legitimate expectation of privacy consists of both a subjective expectation and an objectively reasonable expectation, as determined by societal standards." *Strachan*, 199 So. 3d at 1024 (quoting *Peraza*, 69 So. 3d at 340 (internal quotations omitted)); *see also Twilegar v. State*, 42 So. 3d 177, 193 (Fla. 2010); *McClelland v. State*, 255 So. 3d 929, 932 (Fla. 2d DCA 2018); *State v. Butler*, 1 So. 3d 242, 246-47 (Fla. 1st DCA 2008); *Brown v. State*, 152 So. 3d 619, 623-24 (Fla. 3d DCA 2014) ("A search violates an individual's Fourth Amendment rights only if: (1) a defendant demonstrates that he or she had an actual, subjective expectation of privacy in the property searched; and (2) a defendant establishes that society would recognize that subjective expectation as objectively reasonable.").

Thus, the first question in Fourth Amendment standing analysis "is whether the individual, by his conduct, has exhibited an actual (subjective) expectation of privacy. . . ." *Butler*, 1 So. 3d at 246–47 (quoting *Smith v. Maryland*, 442 U.S. 735, 740 (1979) (internal quotations omitted)). "By failing to have a subjective expectation of privacy, a defendant can be without standing before the reasonableness analysis even begins." *Strachan*, 199 So. 3d at 1024. "The second

7

question is whether the individual's subjective expectation of privacy is one that society is prepared to recognize as reasonable." *Butler*, 1 So. 3d at 247 (quoting *Smith*, 442 U.S. at 740 (internal quotations omitted)); *see also Brown*, 152 So. 3d at 623–24.

## III. Abandonment

A person who voluntarily abandons property lacks standing to challenge its search and seizure. *See State v. Fosmire*, 135 So. 3d 1153, 1156 (Fla. 1st DCA 2014); *Davis v. State*, 226 So. 3d 318, 320 (Fla. 2d DCA 2017); *Mori v. State*, 662 So. 2d 431, 431 (Fla. 3d DCA 1995); *State v. Daniels*, 576 So. 2d 819, 823 (Fla. 4th DCA 1991); *K.W. v. State*, 183 So. 3d 1123, 1129 (Fla. 5th DCA 2015). This is so because a person who abandons property no longer maintains a reasonable expectation of privacy in the property after the person has abandoned it. *See Maxwell v. State*, 443 So. 2d 967, 969 (Fla. 1983); *State v. Terzado*, 513 So. 2d 741, 742 (Fla. 3d DCA 1987) ("If [defendant] abandoned his car, he lost his reasonable expectation of privacy in it, and may not claim a violation of his fourth amendment rights."). For this same reason, no unreasonable search occurs under the Fourth Amendment when the police search property that has been abandoned by a suspect. *See Twilegar*, 42 So. 3d at 193 ("No search occurs when police retrieve property voluntarily abandoned by a suspect in an area where the latter has no reasonable expectation of privacy." (quoting *State v. Lampley*, 817 So. 2d 989, 990-91 (Fla. 4th DCA 2002)

8

(quoting *State v. Milligan*, 411 So. 2d 946, 947 (Fla. 4th DCA 1982)))). No warrant is required for police to search abandoned property. *Caraballo v. State*, 39 So. 3d 1234, 1245 (Fla. 2010) ("[P]olice may conduct a search without a warrant if . . . the individual has abandoned his or her interest in the property in question." (quoting *Peterka v. State*, 890 So. 2d 219, 243 (Fla. 2004))); *see also State v. Milewski*, 194 So. 3d 376, 379 (Fla. 3d DCA 2016) ("[A]bandoned property is not subject to Fourth Amendment protection." (citing *Hester v. United States*, 265 U.S. 57, 58 (1924))).

Importantly, abandonment for purposes of the Fourth Amendment is distinct from abandonment under property law. *United States v. Harrison*, 689 F.3d 301, 307 (3d Cir. 2012); *Lampley*, 817 So. 2d at 991 ("In contrast to property law, which defines the often subtle nuances of ownership, courts treat the concept of 'abandonment' differently in the context of search and seizure law.").

> The distinction between abandonment in the property-law sense and abandonment in the constitutional sense is critical to a proper analysis of the issue. In the law of property, the question . . . is whether the owner has voluntarily, intentionally, and unconditionally relinquished his interest in the property so that another, having acquired possession, may successfully assert his superior interest. In the law of search and seizure, however, the question is whether the defendant has, in discarding the property, relinquished his reasonable expectation of privacy so that its seizure and search is reasonable within the limits of the Fourth Amendment. In essence, what is abandoned is not necessarily the defendant's property, but his reasonable expectation of privacy therein.

*State v. Kennon*, 652 So. 2d 396, 398 (Fla. 2d DCA 1995) (quoting *City of St. Paul v. Vaughn*, 237 N.W.2d 365, 370-71 (Minn. 1975) (internal alterations and citations

9

omitted)); *see also State v. Teltser*, 300 S.E.2d 554, 555 (N.C. Ct. App. 1983) ("The issue is not abandonment in the strict property-right sense, but whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search." (quoting *United States v. Colbert*, 474 F.2d 174, 176 (5th Cir. 1973))). "In some cases, of course, the property will be abandoned in the property sense as well." *Kelly v. State*, 536 So. 2d 1113, 1114 (Fla. 1st DCA 1988) (citing *Abel v. United States*, 362 U.S. 217, 241 (1960)).

For purposes of the Fourth Amendment, "the test for abandonment is whether a defendant voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search." *Caraballo*, 39 So. 3d at 1245 (quoting *Branch v. State*, 952 So. 2d 470, 476 n.4 (Fla. 2006) (internal alterations omitted)); *see also Twilegar*, 42 So. 3d at 193. This is an objective determination, based on a totality of the circumstances. *See Kelly*, 536 So. 2d at 1114 (citing *United States v. Kendall*, 665 F.2d 199, 201 (9th Cir. 1981)).

Some of our sister courts have stated that "[w]hether property has been 'abandoned' for search and seizure purposes is viewed primarily as a question of intent, to be inferred from the words and actions of the parties and other

10

circumstances surrounding the purported abandonment." *Kennon*, 652 So. 2d at 397 (quoting *Kelly*, 536 So. 2d at 1114); *see also Milewski*, 194 So. 3d at 379. This language is misleading, and we reject its use because it implies a defendant's subjective intent plays a dominant role in an objective analysis.[5] Neither the Florida Supreme Court nor the United States Supreme Court has ever described the test for abandonment in this manner; we determine whether abandonment occurred objectively. *See Caraballo*, 39 So. 3d at 1245 ("[T]he test for abandonment is whether a defendant voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a *reasonable* expectation of privacy with regard to it at the time of the search." (emphasis added)); *Kelly*, 536 So. 2d at 1114; *O'Shaughnessy v. State*, 420 So. 2d 377, 379 (Fla. 3d DCA 1982) ("[T]he test to be applied in determining whether a person has

---

[5] Some federal circuit courts have used similar language. *See e.g. Friedman v. United States*, 347 F.2d 697, 704 (8th Cir. 1965); *United States v. Ferebee*, 957 F.3d 406, 413 (4th Cir. 2020). Despite using language concerning "intent," other federal courts have made clear that abandonment is determined using an objective test. *See Kendall*, 655 F.2d at 201; *Harrison*, 689 F.3d at 306-07; *United States v. Small*, 944 F.3d 490, 502 (4th Cir. 2019); *United States v. Porter*, 66 F.4th 1223, 1226 (10th Cir. 2023); *United States v. Hernandez*, 7 F.3d 944, 947 (10th Cir. 1993). Likewise in *Kelly*, the First District used language concerning intent but nonetheless made clear that the test it applied was an objective one. *Kelly*, 536 So. 2d at 1114. Thus, the difference in language does not necessarily imply that the courts that have used this language intended to set forth a subjective test. We note the difference in language only to clarify that despite language in some Florida and federal cases that could be interpreted as setting forth a test that depends on the subjective intent of the defendant, it is in fact an objective test.

abandoned property is an objective one—the words used, the conduct exhibited, and other objective facts such as where and for what length of time the property is relinquished and the condition of the property."); *United States v. Crumble*, 878 F.3d 656, 659-60 (8th Cir. 2018) ("Abandonment, however, does not turn on [the defendant's] subjective intent, but rather the objective facts available to the investigating officers." (citing *United States v. Nowak*, 825 F.3d 946, 948 (8th Cir. 2016))); *United States v. Tugwell*, 125 F.3d 600, 602 (8th Cir. 1997) ("Whether an abandonment has occurred is determined on the basis of the objective facts available to the investigating officers, not on the basis of the owner's subjective intent."); *United States v. Rem*, 984 F.2d 806, 810 (7th Cir. 1993) ("The test for abandonment is whether an individual has retained any reasonable expectation of privacy in the object. This determination is to be made by objective standards." (quoting *United States v. Jones*, 707 F.2d 1169, 1172 (10th Cir. 1983))).

Thus, to determine whether property was abandoned, we focus on whether the defendant retained an objectively reasonable expectation of privacy in the subject property at the time of a search, not whether the defendant subjectively intended to abandon the property.[6]

---

[6] Of course, if the evidence in a particular case established that a defendant lacked an actual, subjective expectation of privacy in property that was alleged to be abandoned, that could also serve as a separate basis to find that the first prong of Fourth Amendment standing analysis was not satisfied and that, therefore, the defendant lacked standing to contest the search under the Fourth Amendment.

## IV. Hargrove's Motion to Suppress

In this case, Hargrove left his bag on a residential property that he had no legal right to enter and in a vehicle that he had no legal right to enter.[7] Therefore, Hargrove left the bag in a place where he could not legally retrieve it. *See* § 810.08, Fla. Stat. (2000) (making it a second-degree misdemeanor to enter an unoccupied conveyance without authorization). Moreover, he left the bag under the control of a third party, Ortiz, whom he did not know or have any control over and in a place which gave that third party the ability and legal right to seize the bag, open it, and examine its contents. As the owner of the vehicle in which the bag was left and the property on which the vehicle was located, Ortiz had the legal right to seize and examine any property that was left within her vehicle without her permission.

Simply put, it was not objectively reasonable for Hargrove to expect the contents of the bag to remain private when he placed the bag in a place from which he could not legally retrieve it and in the possession and control of another person who then had the legal right to disclose the contents of the bag to whomever she pleased, including law enforcement or anyone else. *See Teltser*, 300 S.E.2d at 556

---

[7] Since Hargrove hid the bag in the vehicle before he was arrested by law enforcement, it is also clear that the bag was not seized from Hargrove by law enforcement as part of their arrest of Hargrove. Rather, Hargrove abandoned the bag prior to being arrested and seized by law enforcement. The fact that Hargrove was fleeing from and attempting to avoid arrest by law enforcement at the time he abandoned the bag does not affect this analysis. *See Perez v. State*, 620 So. 2d 1256, 1258 (Fla. 1993) (citing *California v. Hodari D.*, 499 U.S. 621 (1991)).

("When one voluntarily puts property under the control of another, he must be viewed as having relinquished any prior legitimate expectation of privacy with regard to that property, as it becomes subject to public exposure upon the whim of the other person." (quoting *State v. Jordan*, 252 S.E.2d 857, 859 (N.C. Ct. App. 1979))); *see also Lampley*, 817 So. 2d at 990 (holding that defendant had no reasonable expectation of privacy in property that he placed in the wheel well of a truck left in a parking lot in a public place); *Kennon*, 652 So. 2d at 399 (holding that defendant had no reasonable expectation of privacy in property that she placed under the wheel of a vehicle in a public area that could be accessed by third parties). By placing the bag in a place from which he could not legally retrieve it and under the control of a third party who had the right to seize the bag and announce the contents of the bag to the world, Hargrove abandoned any reasonable expectation of privacy in the bag and its contents. Accordingly, Hargrove lacks standing to contest law enforcement's subsequent search of the bag, the bag was not subject to Fourth Amendment protection, and the Sheriff's Office was not required to obtain a warrant to search the bag.

## Conclusion

For the foregoing reasons, the trial court properly denied Hargrove's motion to suppress the evidence obtained from the warrantless search of his bag.

AFFIRMED.

14

TRAVER, C.J., and WOZNIAK, J., concur.

Howard L. "Rex" Dimmig, II, Public Defender, and Clayton R. Kaeiser, Special Assistant Public Defender, Bartow, for Appellant.

Ashley Moody, Attorney General, Tallahassee, and Roberts J. Bradford, Jr., Assistant Attorney General, Daytona Beach, for Appellee.

NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING
AND DISPOSITION THEREOF IF TIMELY FILED